Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, and Theodore Gomez, Intervening Plaintiff, Appellants,

v.

LOCAL 126, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, CLC, Appellee.

No. 83–1061.

United States Court of Appeals, Third Circuit.

Argued Jan. 26, 1984.

Decided March 5, 1984.

---

Dennis Paquette (argued), Francis X. Lilly, Deputy Sol. of Labor, John F. Depenbrock, Associate Sol., Susan M. Webman, Robert K. Kopp, U.S.Dept. of Labor, Washington, D.C., Marshall Harris, Regional Sol., Dale J. Belock, U.S.Dept. of Labor, Philadelphia, Pa., for appellant.

Theodore Gomez, pro se.

R. Michael Carr (argued), Stephen J. Springer, Labrum & Doak, Philadelphia, Pa., for appellee.

Before HUNTER and WEIS, Circuit Judges, and GERRY, District Judge *.

## OPINION OF THE COURT

WEIS, Circuit Judge.

After the complaining party's death, another member of a local intervened in union proceedings challenging an election. Because no objection to the intervention was made at that time, we conclude that the union waived its constitutional provision establishing the period within which complaints could be lodged. In that circumstance, the internal union remedies were properly exhausted and therefore the Secre-

tary of Labor was authorized to pursue the election challenge in court under the Labor-Management Reporting and Disclosure Act of 1959. Because the district court dismissed for lack of jurisdiction, we will vacate and remand.

The Secretary of Labor filed suit alleging that defendant Local had violated Title IV of the Act, 29 U.S.C. §§ 401 *et seq.* (1976). After a bench trial limited to the jurisdictional question, the court concluded that the Secretary did not have authority to bring the action because there was not a qualified complainant.

In June 1981, the Local elected its executive board by mail ballot. The results announced on June 25 prompted Theodore Gomez, who had been elected, to file a complaint with the Union's International Vice-President on July 7. Gomez charged that one Christian Brasch was ineligible for the executive committee position to which he had been elected.

On August 4, 1981, union member Vincent Cosenza also contested the election of Brasch as well as that of John Troutman. After Brasch and Troutman voluntarily resigned, Cosenza amended his charge on September 9, adding a protest to the method the executive board used to fill the two vacancies. While his charges were still pending before the Union, Cosenza was killed in an automobile accident on October 9, 1981.

Before hearing from the Union about his own protest, Gomez sent a letter on October 23 notifying the International Vice-President that Cosenza had died. Gomez wrote,

"I and the members of Local 126 that I represent have a continuing interest in the charges of August 4, 1981 and the amended charges of September 9th. In the interest of fairness and justice, I would like to amend and join myself as a party to all the charges above. I have been a party to all of the investigative proceedings.... I hereby waive any

* The Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

further initial proceedings in lieu of a determination by you as International Vice-President. . . .

As an executive officer of Local 126 IBEW, I trust you will inform me of your findings concerning the joint charges. . . ."

Enclosed with this letter were copies of Cosenza's August 4 and September 9 complaints to which Gomez had added his signature and the date "10–23–81."

This letter apparently crossed in the mail with the Union's communication of October 27 informing Gomez that his July 7 protest was moot. Gomez did not take any further action on the July charge.

The Union did not reply directly to the "joinder" correspondence of October 23. However, on November 12, 1981, it sent a letter addressed to Cosenza, with copies to Gomez, to the Local's business agent, and to the union official who had investigated Cosenza's charges. The letter rejected challenges to the election and to the executive board's action in replacing the officials who had resigned. Gomez then brought the Cosenza complaint to the attention of the Secretary of Labor who in turn instituted this suit.

The district court noted that Section 402(a) of the Act, 29 U.S.C. § 482(a), states that a union member who has exhausted internal union remedies may file a complaint with the Secretary of Labor within thirty days after exhaustion. Gomez conceded that his July 7 complaint was time barred, but contended that he properly joined in the Cosenza protest despite a Union constitutional provision requiring that a charge be filed not more than forty-five days after the challenged election.

The district court, 552 F.Supp. 429, observed that Gomez chose to join in the Cosenza proceedings at a time when he could have pursued his July 7 charge. Finding "neither equitable nor legal precedent for permitting Mr. Gomez to succeed to the claim of the deceased union member," the court determined that no valid complaint had been presented to the Secretary. Accordingly, the district court dis-

missed the action because, in the absence of a qualified complainant, the Secretary lacked authority under section 402 to file suit.

None of the parties to this appeal argues that Gomez' original charge of July 7, 1981 remains viable. It is also undisputed that the Cosenza protest fully exhausted the Union's internal procedures and was brought to the Secretary of Labor within the statutorily mandated thirty-day period. The contested issue is whether Gomez' joinder in the Cosenza charges satisfied the statutory requirement that a member exhaust union remedies before complaining to the Secretary.

An appropriate beginning to the analysis of this question is an examination of the Union's provisions for challenging an election. The procedures are covered in notably brief language. Article XXVII, Section 12 of the IBEW Constitution provides that "[a]ny member who claims an injustice has been done him by any [Local Union] . . . may appeal to the [International Vice-President] any time within forty-five (45) days after the date of the action complained of."

The Union's governing provisions are silent on whether one member may join in another's complaint more than forty-five days after the challenged event, and on whether a protest automatically becomes moot on the death of the charging party. Because these matters are not mentioned in the IBEW Constitution or the Local's by-laws, the Union's treatment of the Cosenza complaint takes on particular importance.

After receiving the notice of "joinder" in Cosenza's complaint, the Union did not dispute Gomez' eligibility to follow that procedure or its timeliness; nor did the Union contend that Cosenza's charges died with him. To the contrary, in the November 12 letter addressed to Cosenza, the International Vice-President carefully reviewed each of the points Cosenza had raised in his original and amended complaint. For example, Cosenza argued that he should have been named to the executive board after Troutman and Brasch resigned. Cosenza's

death seemingly would have made any decision on that point unnecessary but nevertheless the Vice-President discussed the authority of the election board in such circumstances.

That a copy of the Cosenza decision was sent to Gomez may be interpreted as either a response to his request to be informed of the result or acknowledgement that he was a co-complainant with Cosenza entitled in his own right to a copy of the Union's resolution of the dispute. Nowhere in its letter did the Union challenge Gomez' right to intervene or join with Cosenza, or the timeliness of that action. Because Gomez had written that he and other members of the Local had a continuing interest in the charges, it is reasonable to assume that the Union's silence amounted to recognition that Gomez' joinder was proper and that the protest retained its vitality. We conclude that the Union accepted Gomez' joinder.

The district court nevertheless felt constrained to hold against the Secretary because of our decision in *Hodgson v. United Steelworkers*, 459 F.2d 348 (3d Cir.1972). That case, however, is distinguishable. There, the complaining member was told by the union, "in no uncertain terms," that his relief within the union was limited to the procedures "that had already been completed." *Id.* at 352. Therefore, the Secretary could not justify his position that internal union remedies were not completed until some six weeks after the union had clearly rejected the member's challenge. In this case, the International's silence on the forty-five day rule and joinder rights is at best ambiguous and leads to the contrary conclusion.

Our interpretation of the Union's failure to object as acquiescence or waiver is consistent with the Act's purpose in requiring exhaustion of internal remedies—preserving union independence by minimizing governmental intervention in election disputes. S.Rep. No. 187, 86th Cong., 1st Sess. 2, *reprinted in* 1959 U.S.Code Cong. & Ad. News 2318, 2323. Under the Act, the union is given the opportunity to redress the vio-

lation before the Secretary's enforcement powers may be exercised. 29 U.S.C. § 482 (1976). However, the provision is designed ultimately to serve rank and file union members, *Hodgson v. Local Union 6799, United Steelworkers*, 403 U.S. 333, 340, 91 S.Ct. 1841, 1846, 29 L.Ed.2d 510 (1971), by insuring them a voice in union policy and leadership through free elections, S.Rep. No. 187, 86th Cong., 1st Sess. 2, *reprinted in* 1959 U.S.Code Cong. & Ad.News 2318, 2323.

In order to carry out the congressional intent, once a member protests, "a heavy burden [falls] on the union to show that it could not in any way discern that the member was complaining of the violation in question," *Local Union 6799*, 403 U.S. at 341, 91 S.Ct. at 1846, and any ambiguities must be liberally construed in favor of the complaining member. *Hodgson v. District 6, United Mine Workers*, 474 F.2d 940, 946 (6th Cir.1973). The Supreme Court set the tone when it admonished, "members should not be held to procedural niceties while seeking redress within their unions. . . ." *Local Union 6799*, 403 U.S. at 341 n. 6, 91 S.Ct. at 1846 n. 6. *See also Wirtz v. Local 153, Glass Bottle Blowers Ass'n.*, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968).

In treating the Union's lack of objection to Gomez' joinder as approval of his decision to pursue Cosenza's complaint, the public policy of promoting untainted union elections is vindicated. In *Wirtz v. Bottle Blowers*, the Supreme Court observed that "Congress emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." 389 U.S. at 475, 88 S.Ct. at 650. Gomez specifically asserted this common interest in his joinder letter, and as this court noted in another context, "We have no difficulty in concluding that all [Electrical Workers], but especially those in [Local 126 will benefit] from the ultimate vindication of union democracy." *Marshall v. United Steelworkers*, 666 F.2d 845, 851 (3d Cir. 1981).

The Union's forty-five day rule is akin to a statute of limitations. Even in the often

technical field of civil procedure that defense is waived by inaction. We are not aware of any reason to follow a different course in giving practical effect to internal union proceedings.

Cosenza's charge was timely filed and met both the internal and statutory time requirements. Although Gomez' joinder occurred after the forty-five day period specified in the IBEW constitution, he joined a protest that conformed with the Union's time schedule. The result we reach does not sacrifice the Union's interest in stability.

In summary, we conclude that Gomez properly joined the timely Cosenza complaint and exhausted internal union remedies. That being so, the Secretary had a qualified complainant and was authorized to file suit against the Union. The judgment of the district court will be vacated and the matter will be remanded for further proceedings.