Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

MISSOURI PACIFIC SYSTEM FEDERATION JOINT PROTECTIVE BOARD OF THE BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, AFL–CIO, Defendant-Appellee.

No. 83–2329.

United States Court of Appeals, Fifth Circuit.

July 11, 1984.

Bob Wortham, U.S. Atty., Tyler, Tex., William Cornelius, Asst. U.S. Atty., Tyler, Tex., James E. White, Reg. Sol., Dept. of Labor, Dallas, Tex., Stanford Dubin, Atty., U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant.

Mullinax, Wells, Baab & Cloutman, Louis P. Malone, III, Sanford R. Denison, Dallas, Tex., for defendant-appellee.

Before TIMBERS,* POLITZ and RANDALL, Circuit Judges.

* Of the Second Circuit, by designation.

TIMBERS, Circuit Judge:

The Secretary of Labor commenced this action in the Eastern District of Texas alleging violation of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 481 *et seq.* (1982), and seeking to void the last election of the officers of appellee Brotherhood of Maintenance of Way Employees (Union) which was held July 28, 1980. The Secretary contends that the election was influenced by the failure of some of the subordinate lodges of the Union to comply with a requirement that notice of delegate elections be mailed to each member not less than 15 days prior to the election. The action was dismissed following trial. The court, Thomas M. Reavley, *Circuit Judge*,[1] held that the protesting union member had failed to exhaust available union remedies prior to filing a complaint with the Secretary, as required by 29 U.S.C. § 482(a)(1) (1982). Since we hold that the union member's protest letter adequately exhausted his internal union remedies, we reverse and remand for further proceedings according to law.

## I.

The Union is a three-tiered labor organization consisting of more than 1,000 subordinate or local lodges under the jurisdiction of approximately 40 System Federations, which in turn are affiliated with the Grand Lodge. The Missouri Pacific System Federation Joint Protective Board (Federation) is one of these intermediate System Federations. It has jurisdiction over 56 local lodges. The Federation mailed a convention call, dated January 28, 1980, to its subordinate lodges, notifying them that the Federation convention would be held in Wichita, Kansas, on July 28, 1980 to elect Federation officers and to conduct other business. Each local lodge was entitled to send one convention delegate, provided that no delegate could represent more than 300 members. The election of convention delegates was to be in accordance with the Constitution and Bylaws of the Grand Lodge. Article XX, Section 10, provides, in part, that all members of the local lodges who are in good standing must be given at least 15 days advance notice of the date, time and place at which nominations for convention delegate will be made, as well as the date, time and place at which the delegate elections will be held.

The convention was held as scheduled. L.W. Borden challenged the incumbent, T.G. Hawkes, Jr., for the position of General Chairman. Borden lost by a narrow margin.[2] At the convention, he raised a point of order on the ground that some of the subordinate lodges had not complied with the notice of delegate election requirement.

A month after the convention, Borden decided to protest the election. He initially contacted the Department of Labor by a letter dated September 10, 1980. He was told that he must exhaust his internal union remedies prior to filing a complaint with the Secretary.

On September 16, 1980, Borden wrote a letter[3] to Olee Berge, President of the

---

1. Of the Court of Appeals for the Fifth Circuit, sitting by designation.

2. The terms of the officers elected at the challenged election expire in July 1984. Delegate elections for the July 1984 convention already have taken place. Nevertheless, this action is not moot. In *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 473–74 (1968), the Supreme Court held that, when the Secretary proves a violation that may have affected the outcome of a challenged election of union officers, the fact that the union already has conducted another unsupervised election does not deprive the Secretary of his right to a court order declaring the challenged election void and

directing that a new election be conducted under his supervision.

3. Borden's letter to Berge was as follows:
   "Dear Sir:

   On July 28, 1980, the Missouri Pacific System Federation held their quadrennial convention. Eighteen months prior to this convention I announced I would run for the office of General Chairman.

   . In the course of my campaign, Bro. T.G. Hawkes, Jr., did not make a list of members available to me. His correspondence to the lodges was done on union stationary and typed by his secretary. Also, he was on ex-

Grand Lodge. In this letter he complained about several aspects of the election, including the allegation that members were "not given the opportunity to attend meetings or take part in the election of a delegate." Berge responded with a letter dated September 22, 1980,[4] which stated among other things that, unless and until Borden furnished him with "evidence of a probative nature showing that there is a basis for your accusations, your request for an investigation is declined."

Borden interpreted this response as a denial of his request. He filed a complaint with the Secretary of Labor dated October 2, 1980. His complaint consisted of a letter stating that proof of the allegations was in the possession of the Grand Lodge and asking the Secretary to investigate. He enclosed a copy of his letter to Berge and the latter's response.

The Secretary investigated and found merit to the protest that some members were not given the opportunity to attend meetings or to take part in the election of a delegate because they had not been properly notified. After receiving the Department of Labor's Summary of Violations letter, the Union also conducted an investigation. It found that in some cases proper

pense when he went to each lodge to campaign. According to the Election Provisions of the Labor-Management Reporting and Disclosure Act of 1959, he is in Violation of all the above statements. His expenses for last year was over $24,000.

Less than 30 days before the convention I asked for a list of delegates. I was given a list of 37 names and addresses of which at least four were wrong. The number of delegates at the convention was 41. The final vote was 2,738 for Bro. Hawkes, 2,473 for myself, and 133 votes Spoiled. Due to the closeness of the vote and the fact that several lodges were not properly represented, I would like for you to look into this matter as soon as possible.

There are a lot of angry people on this system, who Think that our election process was grossly violated. Some of the lodges have been stacked with members and not given the opportunity to attend meetings or take part in the election of a delegate.

Thank you in advance and call me if you need anymore information on this matter.

Fraternally yours
/s/ L.W. Borden

notice had not been given, but concluded that this failure did not affect the outcome of the election.

The Secretary commenced this action in the district court on January 5, 1981 seeking to have the July 28, 1980 election declared void and to have an immediate new election, under the supervision of the Department of Labor, for 7 of the 9 offices of the Federation Board. The complaint alleged certain violations of the LMRDA. It alleged that 29 U.S.C. § 481(e) had been violated in that 8 of the 56 subordinate lodges had not given the 15-day notice of delegate election required by that section of the statute, and that 29 U.S.C. § 481(d) had been violated in that one of the lodges was represented by a delegate who had not been elected.

After a bench trial on February 11, 1983, the court filed a concise, straightforward decision on March 17, 1983. The court dismissed the action on the basis of a finding that the protesting union member had failed to exhaust union remedies available to him as required by 29 U.S.C. § 482(a)(1). The court held that "Borden was required to make known his objection with such specific basis as was known to him", and that he had failed to do so.

L.W. Borden
Secretary Treasurer
Lodge 1193"

4. Berge's letter to Borden was as follows:
"Dear Sir and Brother:

This will acknowledge receipt of your letter dated September 16, 1980 wherein you allege that many of General Chairman Hawkes' actions prior to the recent Missouri Pacific System Federation quadrennial convention were in violation of the Labor-Management Reporting and Disclosure Act, and request that I look into the matter.

Brother Borden, although your letter is replete with serious accusations, you have not provided me with any evidence in support thereof. Consequently, unless and until you furnish this office with evidence of a probative nature showing that there is a basis for your accusations, your request for an investigation is declined.

With best wishes, I am

Fraternally yours,
/s/ O.M. Berge
President"

## II.

The sole question presented on this appeal is whether Borden adequately exhausted his union remedies before filing a complaint with the Department of Labor. Section 402(a) of the LMRDA, 29 U.S.C. § 482(a)(1), requires that a member of a labor organization "exhaust [ ] the remedies available under the constitution and bylaws of such organization and of any parent body" prior to filing a complaint with the Secretary of Labor alleging election violations.[5] The justification for this requirement is "to postpone governmental intervention until the union is afforded the opportunity to redress the violation." *Wirtz v. Local 153, supra* note 2, 389 U.S. at 472. *See* S.Rep. No. 187, 86th Cong., 1st Sess. 2, *reprinted in* 1959 U.S.Code Cong. & Ad.News 2318, 2323.

*Hodgson v. Local Union 6799, United Steelworkers (Local 6799)*, 403 U.S. 333 (1971), held that "when a union member is aware of the facts supporting an alleged election violation, the member must, in some discernible fashion, indicate to his union his dissatisfaction with those facts if he is to meet the exhaustion requirement". *Id.* at 341. The Union interprets this to mean that all information bearing on the alleged violation which is at the disposal of the union member must be specifically divulged in his initial protest. We disagree.

In *Local 6799*, the union member's internal protest dealt with several matters, including the use of union facilities to prepare campaign materials for the incumbent president. An objection concerning a meeting-attendance requirement imposed as a condition of candidacy for union office—a claim wholly unrelated to those presented in the union protest—was raised for the first time in the union member's complaint filed with the Secretary of Labor. The facts of the instant case are significantly different. Here, Borden presented all of his claims to Berge in his letter of September 16, 1980. The union does not contend that Borden is now alleging any new grounds for relief, only that his protest was insufficiently specific in detailing the alleged violations. Thus *Local 6799* is distinguishable on this ground. The sentence in the opinion requiring the union member to present *facts* must be read in light of the holding that "courts should impose a heavy burden on the union to show that it could not in any way *discern that a member was complaining of the violation in question.*" 403 U.S. at 341 (emphasis added) (footnote omitted).

Subsequent cases have interpreted *Local 6799* as requiring only that the union be able to discern that the member was complaining of the violation ultimately litigated. *See, e.g., Donovan v. Local Union No. 120, Laborers' International Union*, 683 F.2d 1095 (7th Cir.1982) (union protest concerning application of a rule exhausted later challenge by the Secretary to the validity of the rule); *Hodgson v. District 6, United Mine Workers*, 474 F.2d 940, 946 (6th Cir.1973) ("the fact that Howard's protests can be read fairly as attacking the validity of the rule in question, is sufficient to meet the exhaustion requirement"); *Hodgson v. Local 1299, United Steelworkers*, 453 F.2d 565 (6th Cir.1971) (test is whether union had fair notice that members were complaining about the validity of the meeting-attendance rule when protest challenged the application of the rule); *Ba-*

---

5. 29 U.S.C. § 482(a) provides:

"**(a) Filing of complaint; presumption of validity of challenged election**

A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 [29 U.S.C. § 481] (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide."

*lanoff v. Donovan,* 569 F.Supp. 966 (N.D. Ill.1983) (attack which focused on particular issues of a newspaper did not provide the union with "fair notice" that member also was dissatisfied with his own lack of coverage in subsequent issues of the paper). We are aware of no case where, even though the nature of the alleged violation was known to the union, nevertheless the union member's complaint was dismissed because the specific instances constituting the violation were not included in the internal protest.

■ Applying this analysis to the instant case, we conclude that Borden's letter, although broad and lacking specific information, nevertheless satisfied the requirement of § 482(a)(1). The letter specifically stated that "several lodges were not properly represented" and that "[s]ome of the lodges have been stacked with members and not given the opportunity to attend meetings or take part in the election of a delegate."[6] He indicated his "dissatisfaction" with these facts regarding election defects, and offered to provide more information if called upon to do so by Berge.[7] In *Local 6799,* the Supreme Court acknowledged the likelihood of broad and imprecise language in internal union protests. 403 U.S. at 340. And the Court previously had pointed out that Congress did not intend to restrict the availability of relief according to the "artfulness of a layman's complaint which often must be based on incomplete information." *Wirtz v. Local Union No. 125, Laborers' International Union,* 389 U.S. 477, 482 (1968). Any ambiguities must be liberally construed in favor of the complaining member. *Donovan v. Local*

*126, International Brotherhood of Electrical Workers,* 728 F.2d 610 (3d Cir.1984); *Hodgson v. District 6, United Mine Workers, supra,* 474 F.2d at 946.

Unions are expected to "provide responsible and responsive procedures for investigating and redressing members' election grievances." *Wirtz v. Local Union No. 125, supra,* 389 U.S. at 484. The Union in the instant case had no established grievance procedure for election protests at the time Borden wrote Berge. In this context, the tone of Berge's letter to Borden strikes us as irresponsible and unresponsive. Instead of merely requesting additional information, the letter stated that *"unless and until you furnish this office with evidence of a probative nature showing that there is a basis for your accusations, your request for an investigation is declined"* (emphasis added). This understandably gave Borden the impression that his request has been denied.[8] At the very least, it makes clear that the burden of substantiation was being placed on Borden, and that the Union would take no further action unless Borden produced "evidence of a probative nature".

There is no statutory requirement that complaining union members must present evidence. *See Hodgson v. Local 734, International Brotherhood of Teamsters,* 336 F.Supp. 1243, 1253 (N.D.Ill.1972); *Wirtz v. American Guild of Variety Artists,* 267 F.Supp. 527, 533 (S.D.N.Y.1967); *Wirtz v. Local Union 169, International Hod Carriers,* 246 F.Supp. 741, 751–52 (D.Nev.1965). We are not aware of any

**6.** The Union argues that this complaint is entitled to less attention because it follows a more lengthy attack on the advantages given the incumbent General Chairman. We reject this argument as wholly without merit. Unless distorted by being excerpted out of context, the location of a particular claim within a protest letter is irrelevant.

**7.** There is disagreement between the parties concerning Borden's knowledge of particular facts at the time he wrote the letter to Berge. The district court found that he raised a point of order at the convention on the ground that

some of the subordinate lodges had not complied with the notice of delegate election requirement; so he apparently had knowledge of defects in notice which were not specifically mentioned in his letter of protest.

**8.** Berge testified at trial that he expected Borden to respond to his letter. Such an expectation may very well have been unreasonable, in view of the negative tone of Berge's response to Borden's protest. Exhaustion is to be objectively determined. *Hodgson v. District 6, United Mine Workers, supra,* 474 F.2d at 946 & n. 6.

provision in the Union's constitution or by-laws which imposes any such requirement.

 There is a "strong affirmative duty placed upon the union to ascertain the scope of the member's protest." *Hodgson v. Local 734, supra,* 336 F.Supp. at 1253. We hold that, where the substance of a violation is presented to a union and the member offers to provide more information if called upon to do so, the union is not privileged to decline to investigate unless the member offers probative evidence and thereafter to argue that it was not given an opportunity to correct the problem before the Secretary's intervention.

For the reasons stated above, we reverse and remand for further proceedings according to law, with costs to appellant in this Court. The mandate shall issue forthwith.

REVERSED and REMANDED.