James D. HODGSON, Secretary of
Labor, Appellant,

v.

DISTRICT 6, UNITED MINE WORKERS
OF AMERICA, et al., Appellees.

No. 72–1198.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1972.

Decided Feb. 28, 1973.

Robert S. Greenspan, Dept. of Justice, for appellant; L. Patrick Gray, III, Asst. Atty. Gen., William W. Milligan, U. S. Atty., Walter H. Fleischer, Atty., Dept. of Justice, Washington, D. C., on brief.

Harry R. Paulino, Columbus, Ohio, for appellees; Edward L. Carey, Gen. Counsel, United Mine Workers of America, Washington, D. C., Paul A. Pachuta, Columbus, Ohio, on brief.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and GUBOW,* District Judge.

WEICK, Circuit Judge.

The Secretary of Labor [Secretary] has appealed from an order of the District Court granting summary judgment dismissing his complaint in an action to declare void an election conducted by District 6, United Mine Workers of America [union], in violation of the Labor-Management Reporting and Disclosure Act of 1959 [Act], 29 U.S.C. §§ 401–531.

---

* The Honorable Lawrence Gubow, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

The Secretary brought the suit following a complaint made to him by a union member that he (the union member) had been prevented from becoming a candidate for an elective office in the United Mine Workers Union. The Secretary alleged in his complaint filed in the District Court that the particular union rule which barred the candidacy of the union member was unreasonable, and thus in contravention of Section 401(e) of the Act. 29 U.S.C. § 481(e).

The District Court held that the Secretary was precluded from filing an action under Section 401(e) on the ground that the union member had not exhausted internal union remedies as required under Section 402(a) of the Act. The Court held, alternatively, that even if the union member had exhausted internal union remedies, the rule which precluded his candidacy was reasonable.

We reverse. We are of the opinion that the union member exhausted his internal union remedies, and that the union rule which barred his candidacy was unreasonable, in contravention of Section 401(e) of the Act.

On December 10, 1968, an election was conducted by District 6, United Mine Workers of America, for the office of International Executive Board Member. William Howard, whose complaint led to the institution of this· action, attempted to become a candidate for this elective office.

The nominating procedure to be followed by the union in elections for international offices, are prescribed by Article VIII of the Constitution of District 6, UMW.[1]

On June 25, 1968 the Secretary-Treasurer of District 6 sent letters to all seventy-nine locals under the jurisdiction of District 6, informing the locals that there was an upcoming election for the office of International Board Member. The letters contained blank nominating certificates to be used by the locals if they wished to nominate a union member for candidacy in the election.

The letter of June 25, 1968 also stated:

"All nomination certificates must be sent so they will reach this office on or before August 10, 1968. Certificates of Nomination arriving at District Headquarters, 85 East Gay Street, Columbus, Ohio 43215, after that date cannot be counted."

This statement conformed with the nomination rules prescribed in the Constitution of District 6 in that it provided approximately one month within which the locals were to send in their completed nominating certificates.

It is undisputed that William Howard was duly nominated for the position of International Executive Board Member by five local unions as required by Article VIII of the Constitution. Nomination certificates were timely sent by four of the local unions to Columbus, by the local recording secretaries of those unions. However, although Howard had received the nomination of Local 1417 by vote of its members on July 28, 1968, the recording secretary of this local did

[1]. Article VIII provides:

"Nomination and Election of Officers

"Section 3. The District Secretary-Treasurer shall prepare nomination blanks and send them by registered mail to the local Unions not later than five months before the date of election and the Local Recording Secretary shall fill in the names of the members nominated by the Local Union for the various offices and forward the same by registered mail to reach the District Secretary-Treasurer's office not later than four months before the date of election.

"Section 4. The District Secretary-Treasurer shall within ten days after the nominations are closed notify all persons of their nomination together with a list of Local Unions nominating each nominee and ask if they are candidates for the respective offices as indicated by said nominations and get their written consent to place their name on the ballot, but no person shall be notified or be a candidate who has not been nominated by five or more Local Unions."

not mail the nominating certificate to District 6 in Columbus until August 13, 1968, and the certificate was not received until August 14, 1968. Because this fifth certificate was received after the August 10th deadline, it was voided by the District 6 officials.

The District contended that Howard had only four nominations, *i. e.*, one short of the constitutionally required five nominations. Howard was not permitted to become a candidate for office.

The incumbent member of the International Board ran unopposed in the December 10, 1968 election and was reelected.

When Howard did not receive notice of his nomination from the District Secretary-Treasurer, on September 16, 1968, he mailed the following letter to the President of District 6, to W. A. Boyle, President of the International Union, to the International Executive Board Member from District 6, to the Secretary-Treasurer of District 6, and to the Division 4 Board Member of District 6:

"I am a member in good standing of Local 6271, District 6. I was disqualified as a nominee for the office of International Executive Board Member for not having the required endorsements of local unions. I received the nominations of 6 locals but only 4 locals were counted. The 2 locals whose nominations were not counted were not my fault or the fault of the members of these locals. I am protesting my disqualification as a nominee.[2]

"I am also protesting and opposing the system of trusteeship where by our District President and Secretary-Treasurer are appointed.

"If this is not the correct way to protest my disqualification as a nominee, I request you to forward this ap-

peal to the correct channel and that I be so advised.

> Sincerely,
> s/s William S. Howard
> William S. Howard
> Local 6271"

Thomas Williams, President of District 6, answered Howard's letter on October 3, 1968, sending copies to the other Board members, and stating in part:

"I am advised that District No. 6 Secretary-Treasurer R. C. Owens received from Local Unions in District No. 6 by registered mail four nomination blanks nominating you for the office of International Executive Board Member not later than four months before the date of election (August 10, 1968).

"Section 4 of Article VIII states in part: 'no person shall be notified or be a candidate who has not been nominated by five or more Local Unions'. Inasmuch as District No. 6 Secretary-Treasurer R. C. Owens had received by registered mail only four nominations for International Executive Board Member in your name by August 10, 1968, you could not be considered a candidate for this office under the above provisions of Section 4 of Article VIII of our District Constitution.

"However, if you could substantiate your claim through registered mail receipts from five or more Local Unions that you allege nominated you for the office, I am confident that reconsideration could be given you as a nominee for International Executive Board Member from District No. 6."

It is obvious that Williams was not responding to Howard's complaint that although he had been duly nominated for the office by the requisite number of local unions, as required by Article VIII, Section 4 of the District Constitution, he had been disqualified for something which was not his fault nor the fault of

---

2. Howard thought that he had received the nomination of six local unions at the time that he sent this letter. However, it was agreed later by the parties that Howard had received only five nominations, which was all that was required.

the members of the union whose vote was not counted.

Howard had done everything which the Constitution of the union required of him to become a candidate for the office. He had appeared before five local unions and had persuaded their members to nominate him. It was not Howard's fault, nor the fault of the members of Local 1417, that the Recording Secretary of the local waited until after time for filing had expired before sending the nomination certificate to the District office in Columbus. The Constitution placed on the Recording Secretary, and not on Howard, the mandatory duty to forward to the District office the nomination certificate. It was solely on account of the dereliction of duty of the Recording Secretary that Howard's nomination was not timely forwarded.

Williams told Howard in his letter only that he (Howard) would have to substantiate his claim through registered mail receipts proving that the nomination certificates were received by the District office by August 10, 1968, which was an impossibility, as Williams well knew.

On December 11, 1968, one day after the election was held, Howard sent to the union officials another letter which was identical with his letter of September 16th. Williams responded on December 12, 1968, simply referring Howard to Williams' previous letter of October 3rd.

On January 7, 1969, Howard filed a complaint with the Secretary of Labor, alleging a violation of Section 401 of the Act in the conduct of the election. The Secretary investigated the complaint, found probable cause of a violation of the Act under Section 402(b) and after unsuccessful efforts to settle the dispute, instituted the present suit on April 3, 1969.

### EXHAUSTION OF UNION REMEDIES

Section 402 of the Act prescribes the method of determination and enforcement of Section 401(e) voting rights. It provides:

"[A] member of a labor organization—(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body . . . may file a complaint with the Secretary . . . ." 29 U.S.C. § 482(a).

■ The Secretary cannot make an investigation or file a civil suit in the federal courts unless there is a valid complaint by a union member, i. e., a complaint that is made after the member has exhausted his internal union remedies.

The issue of whether William Howard exhausted internal remedies in the United Mine Workers of America before he complained to the Secretary is bifurcated. The first portion of the issue is whether Howard complained through the proper union channels.[3] The second portion of the issue is, assuming that Howard did complain through proper union channels, whether the complaints called into question the *validity* and not just

---

3. Article III, Sec. 3 of the Constitution of the union, provides as follows:

"Sec. 3. In all questions of dispute, appeals and grievances (unless restricted by joint agreement) the right of appeal of an individual member shall end with the District Executive Board, and the right of appeal of any branch of the Organization shall end with the International Executive Board. This shall not prevent individuals whose membership is at stake from appealing to the International Executive Board, which body's decision shall be final and binding unless reversed by the International Convention. When an appeal is taken, the defendants must be furnished a copy of the appeal in ample time to prepare their case. In all cases the decision of the subordinate tribunal must be complied with before the appellant's right of appeal shall be recognized. However, the appellant shall have the right of appeal, provided bond satisfactory to the court of appeal covering the amount of money involved is furnished."

the method of application, of the candidacy rule in question.

Under the union's constitution it was necessary that Howard make his protest to the District Executive Board. He did not address his letter to the Executive Board per se; rather, he sent his letter to individual officials in the International Union, who were also Board members. In fact, Howard's letter went to W. A. Boyle, President of United Mine Workers of America, to the International Executive Board Member of District 6, to the Board's Secretary-Treasurer, and to the Board member who represented Howard's division in the union.

■ Clearly, a letter of protest which reached not only the President of the International Union, but also other members of the Executive Board, is certainly equivalent to an appeal to the Board as an entity.[4] To hold otherwise would be to impose a technical burden which would trap practically every union member.

We turn now to the second aspect of the exhaustion rule: whether Howard's protest letters called into question the validity of the candidacy rule.

In Hodgson v. Local 6799, United Steelworkers, AFL–CIO, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), the Supreme Court noted:

> "[T]he primary objective of the exhaustion requirement [of Sec. 402 of the Act] is to preserve the vitality of internal union mechanisms for resolving election disputes—mechanisms to decide complaints brought by members of the union themselves." (403 U.S. at 340, 91 S.Ct. at 1846.)

In that case the member's complaint to the union included several procedural matters, but did not include an objection to the validity of a meeting-attendance

rule. That objection was included for the first time in the complaint filed by the member with the Secretary. The Secretary, in his suit against the union, challenged the validity of the meeting-attendance rule, which issue he conceded had never been presented by the complaining member to the union. It was the Secretary's contention, which the Supreme Court rejected, two Justices dissenting, that if his investigation uncovered a violation of law on the part of the union, even though not objected to by the member, he was authorized under the Act to seek redress in respect thereto.

■ In the present case the Secretary makes no such contention. He contends that the member's complaint in the present case, although couched in unskilled layman's language, was sufficiently broad to include an objection to the validity of the constitution. In our case, unlike Steelworkers, Howard literally complied with all the provisions of the constitution. He was duly nominated for the office by five local unions. It was solely on account of the dereliction of the Recording Secretary of Local 1417 that Howard's certificate of nomination was not timely forwarded to the District. If Howard can be disqualified because of the dereliction of duty on the part of the Recording Secretary, then Article VIII of the District Constitution is invalid.

In Hodgson v. Local 1299, United Steelworkers of America, 453 F.2d 565 (6th Cir. 1971), we followed the Supreme Court decision in Steelworkers, and held that the exhaustion of remedies requirement is not met when a union member protests the manner in which the rule was applied to him and not the validity of the rule itself. In Local 1299 a number of candidates for union office

---

4. We note that the Third Circuit has held that a letter of protest which reached only the chairman of the appellate tribunal was equivalent to an appeal to the tribunal itself. Shultz v. Local 1291, I. L. A., 429 F.2d 592 (3d Cir. 1970).

We also note that in this case Howard explicitly requested in his letter that the union officials see that the protest was processed through the proper union channels. Their failure to follow instructions cannot be used to frustrate Howard's candidacy.

were declared ineligible to run because of a meeting-attendance rule which was interpreted to require attendance at twelve of the twenty-three meetings preceeding the election. The candidates claimed that the union officials had misread the language of the union's constitution and by-laws, and had not given those documents their "fullest meaning". In court, the candidates testified in substance that their protests were directed at the election committee's decision to exclude from consideration the first thirteen months of the three-year period preceding the election for purposes of applying the meeting-attendance rule.

In essence, we regarded these internal protests of the union members "as an express *affirmation* of the [meeting-attendance] rule" (emphasis added), 453 F.2d at 574. Therefore, since the reasonableness or validity of the candidacy rule was not called to the attention of the union, it could not be said that the union had an opportunity to consider the rule in the same context as was being presented by the Secretary, that the rule was unreasonable under Sec. 401(e) of the Act. Accordingly, we held that the candidates for union office had not effectively exhausted the internal union remedies.

In the instant case, however, we are presented with an entirely different fact pattern. Howard stated in his protest letters that he had been disqualified from being a candidate when in fact he had actually received the required nominations of five local unions, and it was "not my fault or the fault of the members of these locals". The members of the Executive Committee of District 6 could have easily discerned, if they had any interest in looking into the matter,

that Howard was really complaining about the validity of Article VIII of the constitution which vested in the Recording Secretary such absolute and arbitrary power and authority to vitiate his candidacy, when in fact he had fully complied with all of the rules.

It is no answer to say that the union could take action against a recalcitrant Recording Secretary, because that would be too late to help the candidate. It is doubtful whether any action would be taken if the Recording Secretary connived with the incumbent. It certainly cannot be said that Howard's protest "expresses no dissatisfaction with the rule", Local 1299, *supra*, at 575.

 Moreover, even were we to agree that Howard's letters were not too clear, there is "a heavy burden on the union to show that *it could not in any way discern* that a member was complaining of the violation in question", (emphasis added), Hodgson v. Local 6799, United Steelworkers of America, 403 U.S. 333, 341, 91 S.Ct. 1841, 1846 (1971). In our opinion this heavy burden has not been met. Under this standard, any ambiguities must be resolved in favor of the complaining union member. Thus, even if the union officials themselves misunderstood (which we doubt) the substance of Howard's complaint, or even if they in fact thought that Howard was complaining only of a ministerial failure to *count* [5] his nominations as their reply letters indicate, the fact that Howard's protests can be read fairly as attacking the validity of the rule in question, is sufficient to meet the exhaustion requirement. In other words, the exhaustion requirement is to be both liberally construed in favor of the complaining member, and objectively determined.[6]

5. This explanation by the union is substantially undercut by the fact that Howard's second letter of protest was sent after the election was held. It would have been of little value to Howard to have his nominations "counted" at that time.

6. If exhaustion were subjectively determined, union officials could make it very difficult to prove that they had knowledge that the validity of a rule was being attacked. The officials could consistently reply to letters of protest in language which would "show" that they thought that the member was not attacking the validity or reasonableness of the rule.

We therefore hold that Howard exhausted his union remedies, and that the Court had jurisdiction of the Secretary's suit under Section 402 of the Act, challenging the reasonableness of the candidacy rule in question.

## THE REASONABLENESS OF ARTICLE VIII, SEC. 3 OF THE UNION CONSTITUTION

■ Although the District Court held that it had no jurisdiction of the suit because the complaining member did not exhaust his union remedies, the Court addressed itself to the merits of the Secretary's action and held that the rule in question was reasonable. We disagree.

Section 401(e) of the Act provides in part:

"(e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) . . . ."

The question to be decided is whether a union rule [7] which vests in a local Recording Secretary such arbitrary and exclusive authority, power and responsibility for timely sending in valid local nominations to the District office, provides a "reasonable opportunity" to be nominated for office.

The word "reasonable" does not carry an inherently precise definition. At best it is an elusive concept in both our language and our law. In order to give it substance the requirement of reasonableness must be assessed in the light of the purposes which the Congress sought to achieve and the evils which it sought to eliminate by the Act.

One of the prime objectives of the Act was—

". . . to protect the rights of rank—and—file members to partici-pate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership." (Wirtz v. Hotel, etc. Employees Union, Local 6, 391 U.S. 492, 497, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968))

Moreover, as described in the Senate Report on the Act,

"It needs no argument to demonstrate the importance of free and democratic union elections . . . The government which gives unions . . . power has an obligation to insure that the officials who wield it are responsive to the desires of the men and women whom they represent. The best assurance which can be given is a legal guaranty of *free and periodic elections*. The responsiveness of union officers to the will of the members depends upon the frequency of elections, and an honest count of the ballots. *Guaranties of fairness* will preserve the confidence of the public and the members in the integrity of union elections." (Emphasis added). S.Rep.No.187, 86th Cong., 1st Sess., 6–7, 20 (1959); 1 Leg.Hist. 402–403, 416.

It was the opinion of the District Court that even though the policies of fairness and democracy underlay the Act, judicial intervention in union political affairs must be resorted to only in the most "extraordinary and egregious situations." The Supreme Court has consistently cautioned against just such an attitude in the lower federal courts. Wirtz v. Hotel Employees, *supra*, at 496, 88 S.Ct. 1743; Wirtz v. Local 153, Glass Bottle Blowers Ass'n, AFL–CIO, 389 U.S. 463, 473, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). Congress, although committed to minimal intervention, was equally committed to ensuring that unions have democratic and fair election procedures.

Thus, we are not faced with the question of whether Article VIII, Section 3,

---

7. See n. 1 for text.

is an extraordinary or egregious rule; rather, we are faced with the question of whether this rule results in a reasonable opportunity to become a candidate in light of the congressional policy that union election procedures be both democratic and fair.

William Howard met every requirement that he could in his attempt to become a candidate for the office. He attended five local union meetings and persuaded each local union to nominate him for the office; he received valid nominations (by vote) of each of the five local unions. Yet Howard was not permitted to become a candidate solely because the Recording Secretary of only one of the local unions did not send in his name as the nominee of that local until after the time for filing had expired, although the Recording Secretary had ample time to do so. Furthermore, as Howard expressed in his letter of protest to the union, it was not his fault nor the fault of the local union members. As a result, the incumbent union official ran for the office unopposed. The situation is similar to one where a candidate for public office, who timely files his Declaration of Candidacy with the Board of Elections, is disqualified because of some act or neglect on the part of a Board employee.

To say that the union rule gave Howard a reasonable opportunity to become a candidate for office, or to say that the rule comported with the congressional policy of having fair and democratic union elections, would be a travesty on the language of the Act and on the purposes behind it.

In addition, the rule not only unreasonably barred Howard from candidacy, but also it is unreasonable on its face. Because the transmission of nominations is entirely out of the control of local union members and of the candidate himself (the required transmission of nominations is under the *exclusive* control of a union official, the incumbent Recording Secretary), it presents a situation of potential abuse. This rule could be used by incumbent officers to thwart the candidacy of an insurgent union member, and such an abuse would be difficult, if not impossible, to prove.

Finally, in holding the rule to be unreasonable on its face, we take notice of the fact that our decision would require merely the most minimal restructuring of the union's procedures so as to insure that no candidate shall be disqualified when he has complied with all of the rules.

Accordingly, we hold that that portion of Article VIII, Section 3, of the Union Constitution which provides that the local Recording Secretary shall forward nominations to the District by a specified time, does not provide a candidate with a reasonable opportunity to be nominated as required under Section 401(e) of the Act.

The judgment of the District Court is reversed and the cause is remanded to the District Court with instructions to enter judgment in favor of the Secretary.[8]

8. The union, in contending that Article VIII, Sec. 3, of the Union Constitution did not affect the outcome of the election, stated in its motion for summary judgment:

"5. Even had complainant been nominated and placed on the ballot, the outcome of the election would have been no different."

Such an argument is hardly justification for depriving Howard of the opportunity to run for the office. Further, this argument is pure speculation and conjecture, and is not consistent with the purposes of the Act. The District Court did not even mention this ground, as it is obviously frivolous.

We note that there have been a number of intervening elections since the unlawful 1968-election, in question. However, when the Secretary proves a violation of Section 401(e) of the Act, he is *not* deprived of the right to a court-ordered new election under his supervision because the union has meanwhile conducted other unsupervised elections. Wirtz v. Local 153, Glass Bottle Blowers Ass'n, AFL–CIO, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). It makes no difference whether Howard now desires to become a candidate.