William BROCK, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellant,

v.

INTERNATIONAL UNION OF OPERAT-
ING ENGINEERS, LOCAL UNION NO.
369, AFL–CIO, Defendant-Appellee.

No. 84–5130.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 2, 1985.

Decided May 13, 1986.

Raymond J. Donovan, Secretary, U.S.
Dept. of Labor, Atlanta, Ga., William H.
Berger, Atty., W. Hickman Ewing, Jr., U.S.
Atty., Memphis, Tenn., W. James Ellison,
Donald D. Carter, Jr. (argued), U.S. Dept.
of Labor, Washington, D.C., for plaintiff-
appellant.

Tim Edward, Lynn Agee, Berber, Berber
& Agee, Memphis, Tenn., Deborah Godwin
(argued) for defendant-appellee.

Before ENGEL and KENNEDY, Circuit Judges, and NEESE *, Senior District Judge.

ENGEL, Circuit Judge.

The Secretary of Labor appeals from a judgment entered in favor of the International Union of Operating Engineers, Local Union 369, AFL–CIO in the Secretary's action brought under Title IV of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA). 29 U.S.C. § 401 *et seq.*, to set aside an election of officers conducted by the Union on August 11, 1981, insofar as it affected the election for the offices of business agent, recording-corresponding secretary, financial secretary, guard, and two Executive Board positions. After making oral findings of fact on the record in open court, the trial judge held that while a violation of the LMRDA had been established by the Secretary, the presumption arising therefrom that the violation may have affected the election had been overcome. The trial judge then went on to hold that the violation did not in fact affect the election, and entered judgment for the Union. We affirm, but on the alternate basis, raised by the Union but not directly ruled upon by the district court, that the Secretary's action must fail for failure of the complaining parties to exhaust internal union remedies as required by 29 U.S.C. § 482(a)(1).

## I.

In an effort to protect the rights of individual employees to participate in the choice of their own union representatives, subchapter IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481, carefully sets forth discrete provisions governing the election of union officers by secret ballot, free of unethical and unlawful influence. Subsection (g) of 29 U.S.C. § 481 provides:

No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

Enforcement of the foregoing provisions of the Act is provided in section 482. Under section 482(a), a member of a labor organization who complains of a violation of the Act and who has first exhausted the remedies available under the constitution and bylaws of his union or has proceeded for three months after their invocation without obtaining a final decision, may file a complaint with the Secretary within one calendar month thereafter challenging the validity of the election. Section 482(b) further provides that the Secretary shall investigate the complaint and, if he finds probable cause to believe that a violation of the subchapter has occurred and has not been remedied, shall within sixty days after the filing of such complaint bring a civil action against the labor organization in the United States district court in which the labor organization maintains its principal office. Under these provisions, then, exhaustion of union remedies by a complaining union member is a prerequisite to a suit by the Secretary against the union under 29 U.S.C. § 482(b). Moreover, because the Act provides no machinery whereby the Secretary may initiate action, the Secretary can take no independent action against a union until an aggrieved employee has filed a complaint.

The exhaustion requirement has two aspects: procedure and scope. *Hodgson v. District 6, United Mine Workers*, 474 F.2d 940, 944 (6th Cir.1973). The Union in this case does not dispute that its complaining members, James Russell and R.C. Ward, followed the union procedures and complained through proper union channels.

---

* The Honorable C.G. Neese, Senior Judge for the United States District Court for the Eastern District of Tennessee, sitting by designation.

The Union does, however, challenge the permissible scope of the Secretary's complaint in the district court, given the nature of the protests that were filed by Russell and Ward.

The Supreme Court has addressed the exhaustion issue in two cases. In *Wirtz v. Local Union No. 125, Laborers' International Union,* 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968) (*Laborers' Union*), the Secretary filed a complaint challenging the validity both of a general election of local union officers and of a runoff election necessitated by a tie vote for one office in the general election. The loser in the runoff election had protested internally only the conduct of that election, alleging that the practice of the local's secretary-treasurer of paying from union funds delinquent dues of selected members resulted in ineligible members being allowed to vote in the election. The Secretary's investigation disclosed not only that many ineligible members had voted in both the general and runoff elections, but also that 16 of the 27 candidates for office in the general election, including the complaining member's opponent, were ineligible.

The Supreme Court held that the Secretary was entitled to challenge the general election as well as the runoff election "because [the] union had fair notice from the violation charged by [the complaining member] in his protest of the runoff election that the same unlawful conduct probably occurred at the earlier election as well." *Id.* at 481, 88 S.Ct. at 641. The Court rejected the argument that the Secretary's complaint must be limited solely to the allegations made in the union member's initial protest, finding that "Congress, having given the Secretary broad investigative power, cannot have intended that his right to relief be defined by a complaining member's ignorance of the law or the facts or by the artlessness of the member's protest." *Id.* at 485, 88 S.Ct. at 643. The Court recognized that the statute was designed not only to responsibly redress members' election grievances, but also to foster union self-government. However, it felt that both objectives would be "fur-

thered by permitting the Secretary to include in his complaint at least any § 401 violation he has discovered which the union had a fair opportunity to consider and redress in connection with a member's initial complaint." *Id.* at 484, 88 S.Ct. at 643.

Three years later, in *Hodgson v. Local Union 6799, United Steelworkers,* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971) (*Local 6799*), the Court made it clear that the Secretary did not have authority to litigate every violation the investigation might reveal once a union member had exhausted internal union remedies concerning a particular complaint. In *Local 6799,* an unsuccessful candidate filed a written protest with the union, complaining of several violations including the use of union facilities to aid incumbents. After failing to obtain relief through union procedures, he filed a complaint with the Secretary of Labor. The complaint repeated the charge that union facilities had been used improperly and raised a new objection concerning a meeting-attendance requirement imposed as a condition of candidacy for union office. After investigating the complaint, the Secretary brought suit to invalidate the election for both improper use of union facilities and for imposition of unreasonable eligibility requirements.

The Court held that the complaining union member's failure to object to the attendance rule during pursuit of his internal union remedies barred the Secretary from later challenging the rule in court. The Secretary had contended that the statute authorized him "to investigate and litigate any and all violations that may have affected the outcome of an election once a union member has exhausted his internal union remedies concerning any violation that occurred during that election." *Id.* at 337, 91 S.Ct. at 1844. The Court rejected that argument, finding that the Secretary's position would leave the exhaustion requirement with "virtually no purpose or part to play in the statutory scheme" and would slight the congressional interest in avoiding unnecessary governmental interference with internal union affairs. Nevertheless,

the Court recognized that the exhaustion requirement should not be applied so stringently as to bar claims simply because union members are inexpert in framing their protests:

> Of course, any interpretation of the exhaustion requirement must reflect the needs of rank and file union members— those people the requirement is designed ultimately to serve. We are not unmindful that union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations. Union democracy is far too important to permit these deficiencies to foreclose relief from election violations; and in determining whether the exhaustion requirement of § 402(a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question. But when a union member is aware of the facts supporting an alleged election violation, the member must, in some discernible fashion, indicate to his union his dissatisfaction with those facts if he is to meet the exhaustion requirement.

*Id.* at 340–41, 91 S.Ct. at 1846.

Our circuit has addressed the exhaustion issue on two separate occasions. In *Hodgson v. Local 1299, United Steelworkers*, 453 F.2d 565 (6th Cir.1971), we held that the Secretary was not empowered to challenge the *validity* of a meeting-attendance rule for eligibility for union office when the complaining union member's internal protest challenged only the manner in which the rule was *applied*. Several candidates for union office who had been declared ineligible to run had complained of the election committee's decision to exclude from consideration the first thirteen months of the three-year period preceding the election when applying the meeting-attendance rule. They argued that the full three years should have been considered. We found that the challenge to the rule's application had not given the union fair notice of any complaint about the rule's validity. We also noted that, although the complaining members easily could have raised an objection to the rule's validity, they had asked the union instead to apply the rule differently.

Later, in *Hodgson v. District 6, United Mine Workers*, 474 F.2d 940 (6th Cir.1973), our court again faced the question whether a particular protest had challenged the validity, and not just the method of application, of a candidate eligibility rule. The complaining union member, William Howard, had been prevented from becoming a candidate for the office of International Executive Board Member when the recording secretary of one of the locals that nominated him failed to send the nomination certificate to the union's district headquarters within the time provided by the union rules. Howard sent letters of protest to union officials, complaining that he had been disqualified from being a candidate when he actually had received the nominations of the required number of local unions, and that it was "not my fault or the fault of the members of these locals." *Id.* at 943. After receiving no relief from the union, Howard filed a complaint with the Secretary of Labor. The Secretary investigated the complaint and brought suit charging that the eligibility rule was unreasonable and, therefore, invalid. The court held that Howard had exhausted internal union remedies on a challenge to the rule's validity because "[t]he members of the Executive Committee of District 6 could have easily discerned, if they had any interest in looking into the matter, that Howard was really complaining about the validity of Article VIII of the [union] constitution which vested in the Recording Secretary such absolute and arbitrary power and authority to vitiate his candidacy, when in fact he had fully complied with all of the rules." *Id.* at 946. The court held that exhaustion must be objectively, rather than subjectively, determined because otherwise "union officials could make it very difficult to prove that they had knowledge that the validity

of a rule was being attacked." *Id.* at 946 n. 6.

■ The rule emerging from these cases seems to be that the exhaustion requirement is satisfied when the union reasonably should have been able to discern from the protest that the member was complaining of the violation ultimately litigated by the Secretary. This interpretation has been applied by several other circuits. *See Donovan v. Missouri Pacific System Federation Joint Protective Board,* 737 F.2d 445, 448 (5th Cir.1984), and cases cited therein. The sense of the Act and its interpretation is that it must be realistically applied but with due regard for a balance between the rights of industrial union members and the real need of elected union officials to get on with the business of carrying out their duties without the debilitative drag of tardily asserted challenges to their authority. Equally important is the interest in minimizing government intervention into union affairs by giving unions the first opportunity to put their own house in order.

We turn now to the undisputed facts in this litigation.

## II.

The defendant International Union of Operating Engineers, Local Union No. 369, AFL–CIO, is a labor organization within the meaning of the Act. *See* 29 U.S.C. § 402(i). Local 369 is the collective bargaining agent for operating engineers in a geographical area extending from the Mississippi River eastward to a distance of forty miles east of Nashville, thus covering most of middle Tennessee and all of west Tennessee. In compliance with the statute and with the constitution and bylaws of the Union, an election of officers of Local 369 was scheduled to take place on August 11, 1981. Actual voting was to take place at three locations, Nashville, Memphis, and Lexington, Tennessee. The election had been preceded by approximately three months of vigorous campaigning by the several candidates for office.

It is undisputed that on the morning of election day, the incumbent president of the Union, Charles Stewart, arrived at the Nashville polling place to discover that his opponent was passing out pre-printed leaflets which listed a preferred slate of union officers. Stewart then instructed the union's paid secretary, Pam Cates, to type a list of candidates whom he, Stewart, endorsed. Ms. Cates typed the list on a union typewriter and reproduced several copies on a union photocopy machine. There is also evidence that Ms. Cates took the list to a printshop to get additional copies. It is uncertain whether the paper employed for these copies was furnished by the printshop or came from the Union. It is undisputed, however, that at the time she engaged in this activity, Ms. Cates was working on time paid directly by the Union. Later in the day, Stewart and his supporters passed out this list to members of the Union who were voting at the Nashville polling place. Of the nine candidates supported by Stewart three lost, including Stewart himself. Six members of Stewart's slate were elected: the business agent, recording-corresponding secretary, financial secretary, guard, and two Executive Board members. The margin by which these candidates were elected ranged from four votes for one Executive Board member to 178 votes for the office of recording-corresponding secretary. Between eight and nine hundred union members cast their votes at the three locations, depending upon the particular office being voted upon. For example, 830 members cast their votes for president, 413 for Stewart and 417 for Robert (Frenchie) Andujo, Sr. The vote in Nashville for the office of president was 189 for Andujo and 138 for Stewart.[1]

1. Any reader predisposed to a given result upon the facts here should recognize that there is no evidence in the record that any of the six officers whose election was challenged had any part in the unlawful conduct. So far as we know, they could have strongly opposed aligning their own candidacy with others on the slate, including Stewart. There is no evidence whatever that any of the six challenged candidates had anything to do with the unlawful

Shortly after the election, two defeated candidates, James E. Russell and R.C. Ward, lodged written complaints with the Local Union, complaining that the voting records from the Lexington polling place had been lost and that other candidates had solicited votes from union cars on union time in cities other than Nashville. Neither candidate complained of campaign literature being prepared at union expense by Stewart and other union employees in Nashville. Both Russell and Ward testified at trial that they were not aware of the violation until after they filed their complaint with the Secretary of Labor. The Secretary, however, concedes that several other members of the Union in Nashville were aware of Stewart's violation on the day of the election but did not submit a protest. The Union proceeded to investigate the protest as filed but dismissed it for lack of evidence and lack of merit. That dismissal was duly appealed to the International Union's Executive Board which denied the appeal. The complaining union members then filed timely complaints to the same effect with the Secretary of Labor.

While investigating the complaints made, the investigator for the Department of Labor learned of the copying incident. Although the Secretary did not file suit on the charges which had been alleged in the union member's protests, he did bring suit to invalidate the election based upon the copying incident.

The district court in oral findings made from the bench found that the contribution of Ms. Cates' time in typing the lists and in making copies of the union's copy equipment was sufficient to constitute a violation of section 481(g) of the LMRDA and was sufficient to give rise to a presumption that the outcome of the election may have been affected. The court, however, found the facts of the case sufficient to overcome that presumption and, therefore, entered judgment in favor of the Union. While not fully addressing the exhaustion issue raised by the Union, the court stated that it

leaflets or even desired to be identified with the

was "troubled" with the "validity of the complaint" and found that "somebody, including the two people that complained, should have known [that the violation occurred and that it] should have been brought to the attention of the Union first at the Executive Board."

■ That the Union president's activity in employing Ms. Cates and the Union copying machine for personal electioneering purposes was a plain violation of section 481(g) is not seriously disputed. Certainly the trial judge's findings in this regard cannot be said to be clearly erroneous. Our review of the relevant case law in this and other circuits and more particularly in the Supreme Court requires us to recognize that once a violation of section 481 has been demonstrated, the burden upon a defendant union to show that the violation did not affect the election outcome is substantial. *See Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 506–07, 88 S.Ct. 1743, 1751–52, 20 L.Ed.2d 763 (1968); *Marshall v. Local 1010, United Steelworkers*, 664 F.2d 144, 148 (7th Cir. 1981); *Donovan v. Local Union 70, International Brotherhood of Teamsters, Chauffeurs, Warehouseman, and Helpers*, 661 F.2d 1199, 1202 (9th Cir.1981); *Marshall v. Local Union 12447, United Steelworkers*, 591 F.2d 199, 205–06 (3d Cir. 1978); *Usery v. International Organization of Masters, Mates and Pilots*, 538 F.2d 946, 949 (2d Cir.1976). Findings of harmlessness have generally been confined to situations in which the particular violation can clearly be shown to have been isolated in its effect. *See, e.g., Usery v. Stove, Furnace and Allied Appliance Workers*, 547 F.2d 1043, 1046 (8th Cir. 1977); *Marshall v. American Postal Workers*, 486 F.Supp. 79, 82 (D.D.C.1980); *cf. Donovan v. Local 6, Washington Teachers' Union*, 747 F.2d 711 (D.C.Cir. 1984). We find it unnecessary to address this issue here, however, because it is apparent to us that the law in this circuit and in the Supreme Court strongly supports the

others listed on it.

alternative basis for affirmance urged by the Union.

## III.

The Secretary contends that because Russell and Ward lacked knowledge of the incident at the polling place in Nashville, he should be allowed to assert it in his complaint. This argument is not that the exhaustion requirement has been satisfied but rather that it should be excused for violations of which the particular complaining union members were unaware. Arguably, there is some support for this position in the Supreme Court's decisions in *Laborers' Union* and *Local 6799*. [2]

In addition, at least two district courts have accepted the argument that the exhaustion requirement should be excused when complaining union members did not know and could not have known of the violation. *Donovan v. Local 738, International Union United Automobile, Aerospace and Agricultural Implement Workers*, 575 F.Supp. 52 (D.Md.1983); *Donovan v. Blasters, Drillrunners and Miners Union, Local No. 29*, 521 F.Supp. 595 (S.D.N.Y.1981). However, in neither of these cases did the court analyze or explain the rationale or policy behind the holding.

The primary policy behind the Secretary's position appears to be the public interest in assuring free and democratic union elections, a policy which "transcends the narrower interest of the complaining union member." *Steelworkers v. Usery*, 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977) (quoting *Wirtz v. Bottle*

*Blowers Assn.*, 389 U.S. 463, 475, 88 S.Ct. 643, 650, 19 L.Ed.2d 705 (1968)). Therefore, it is arguable that, to protect this public interest, the Secretary should be allowed to litigate election violations of which complaining union members were unaware. The difficulty with this line of reasoning is that it finds no support in either the language or the underlying policies of the statute.

The statutory scheme makes no provision for exceptions to the exhaustion requirement of section 482(a), nor does the legislative history of the LMRDA give any indication that Congress intended that the exhaustion requirement be excused for violations of which union members were unaware. Indeed, the legislative history of the Act quite clearly expresses a congressional intent to minimize government intervention into union affairs in order to encourage union self-government.[3] The Supreme Court also has noted that this policy objective is consistent with, and promoted by, an exhaustion requirement that permits "the unions themselves [to] remedy as many election violations as possible without the Government's ever becoming involved." *Local Union 6799*, 403 U.S. at 339, 91 S.Ct. at 1845. *See also* S.Rep. No. 187, 86th Cong., 1st Sess. 21, *reprinted in* 1959 U.S. Code Cong. & Ad.News 2318, 2337. Furthermore, the cases interpreting the exhaustion requirement flexibly, so as not to preclude complaints the union reasonably should have been able to discern from the complaining member's protest, do not stand for the proposition that the requirement

---

**2.** This argument apparently stems from the Supreme Court's language in *Laborers' Union*, 389 U.S. at 485, 88 S.Ct. at 643, that Congress did not intend to define the Secretary's right to relief "by a complaining member's ignorance of the law or the facts," and from the Court's language in *Local 6799*, 403 U.S. at 340–41, 91 S.Ct. at 1846, that "union democracy is far too important to permit [a lack of information about the existence or scope of many election violations] to foreclose relief from election violations." We do not deem this language controlling, however.

**3.** S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S.Code Cong. & Ad.News 2318, 2323. Here, the Senate Report states:

In acting on this bill the committee followed three principles:

1. The committee recognized the desirability of minimum interference by Government in the internal affairs of any private organization. Trade unions have made a commendable effort to correct internal abuses; hence the committee believes that only essential standards should be imposed by legislation. Moreover, in establishing and enforcing statutory standards great care should be taken not to undermine union self-government or weaken unions in their role as collective-bargaining agents. * * *

may be completely excused. To accept the contention that the Secretary may litigate violations of which no union member complained simply because the complaining member was unaware of them would almost certainly undermine both the policies and the limits on the Secretary's power that are implicit in the statutory scheme.

 We do not believe, therefore, that the exhaustion requirement may be excused under the circumstances here. While it is indeed true that the two disappointed candidates who did complain did not know of the activity in Nashville, it is equally plain and found by the district judge that this information was fully known in Nashville and that any reasonable investigation could quickly have revealed the violation. Action could then have been taken on that complaint had any Union member seen fit to do so. The trial judge's findings in this regard to the extent they are factual, are supported by the record and are not clearly erroneous.

Upon a careful examination of the record, including the language of the protest as actually filed with the Union and the Secretary, we are also satisfied that the exhaustion requirement was not met here with respect to the incident in Nashville. The protest letters alleged two specific violations: the loss of records from the Lexington polls and the solicitation of votes from Union cars on Union time in cities other than Nashville. Neither of these violations was related in any way to the copying incident. The only other allegation in the protest was the statement that "[t]here are numerous other reasons for my protest." While we believe that such protest should be liberally construed, it is in our view quite unreasonable to hold that based upon the protest as filed, the Union should have been able to discern from this unsupported, all-inclusive statement, that the members were complaining of the copying incident. To permit so generalized a complaint to trigger an investigation by the Secretary would, in the words of the Supreme Court, leave the exhaustion requirement with "virtually no purpose or part to play in the statutory scheme." *Local 6799,* 403 U.S. at 340, 91 S.Ct. at 1846. It is not claimed, nor do we believe can it be claimed upon this record, that the Union should have been able to discern from the protest the existence of the complaint in Nashville and thus to have been in a position to address that question when the actual protest was presented to it and to the Union's Executive Board and to the International. The violation charged by the Secretary in his complaint was therefore not one "which the union had a fair opportunity to consider and redress in connection with a member's initial complaint." *Wirtz v. Local 125,* 389 U.S. at 484, 88 S.Ct. at 643.

AFFIRMED.