**Elizabeth DOLE, Plaintiff–Appellant,**

v.

**UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, Defendant–Appellee.**

No. 91–1544.

United States Court of Appeals, Sixth Circuit.

Argued May 11, 1992.

Decided Aug. 3, 1992.

Rehearing Denied Oct. 16, 1992.

Peter A. Caplan, Asst. U.S. Atty. (argued & briefed), Detroit, Mich., for plaintiff-appellant.

M. Jay Whitman (argued & briefed), Associate Gen. Counsel, International Union, UAW, Detroit, Mich., for defendant-appellee.

Before RYAN, BOGGS, and BATCHELDER, Circuit Judges.

RYAN, Circuit Judge.

In this case, brought under the enforcement provisions of section 402 of the Labor–Management Reporting and Disclosure Act of 1959 (Act), 29 U.S.C. § 482, the Secretary of Labor seeks an order setting aside the election of a regional director at the 1989 convention of the International Union of the United Automobile, Aerospace and Agricultural Workers of America, AFL–CIO (UAW), and directing the holding of a new election for the post. The district court granted summary judgment in favor of the UAW on procedural grounds, *Dole v. International Union, UAW*, 758 F.Supp. 1197 (E.D.Mich.1991), and the Secretary appeals.

The principal issue on appeal is whether aggrieved union members exhausted their internal union remedies in a proper and timely manner prior to filing complaints with the Secretary, as required by section 402(a) of the Act. The district court held that they did not. We hold that they did, and reverse.

## I.

On June 21, 1989, Charles Bowling was re-elected to the office of regional director of the UAW by a vote of delegates representing local unions in UAW Region 2–A. Bowling defeated his opponent, Jerry Faulkner, by a margin of 205.672 to 114.318.[1] The Secretary of Labor challenged the results of this election, alleging that union resources were improperly expended in promoting Bowling's re-election campaign, in violation of the Act's election pro-

cedures requirements. The specific challenges involve the use of a union newsletter entitled *Inside 2–A* for political purposes, and letters from union officers in Locals 674 and 2055, printed on the stationery of the respective locals, pledging support for the Bowling candidacy.[2]

These alleged violations of federal law were brought to the Secretary's attention by the presidents of two local unions within Region 2–A, Philip DeRossett and Charles Neese. On July 6, 1989, DeRossett submitted verbal and written complaints to the Cincinnati Office of Labor–Management Standards (OLMS) of the Department of Labor, alleging, *inter alia*, that the election of the Region 2–A director was affected by the improper use of union resources. DeRossett's written complaint was received by the Secretary on or about July 12, 1989. DeRossett also presented his complaints to UAW President Owen Bieber in a letter dated July 6, 1989, and received by the union on or about July 17, 1989. In the letter to Bieber, DeRossett addressed an appeal of Bowling's election to the union's Convention Appeals Committee and the International Executive Board. On August 18, 1989, Charles Neese, another local union president, also attempted to appeal Bowling's election in a letter addressed to President Bieber and the UAW Executive Board. Neese's letter was received by the UAW on or about August 24, 1989.

UAW President Bieber responded to these protests in letters to DeRossett and Neese dated August 24, 1989. In pertinent part, Bieber stated:

We have your letter. . . .

Article 8, Section 15 of the UAW Constitution required that any protest be timely filed with the Credentials Committee of the UAW Convention. Everyone was reminded of this requirement, first, on January 13, 1989, at p. 5 of the official Convention Call, and, again in an Admin-

---

1. The UAW's convention voting procedures permit fractional voting by delegates. *See Brock v. International Union, UAW*, 889 F.2d 685, 687 n. 2 (6th Cir.1989).

2. Section 401(g), in pertinent part, provides that "[n]o moneys received by any labor organiza-

tion by way of dues, assessment, or similar levy . . . shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter." 29 U.S.C. § 481(g).

istrative Letter of January 27, 1989, on the election procedures.

On Wednesday, June 21, 1989, the Constitutional Convention adopted the Final Report of its Credentials Committee. At that point, *all* issues relating to the delegate elections or the conduct of the campaigns were closed by vote of the Convention itself. This is true whether *or not* a protest was presented to the Credentials Committee or the Convention.

With that vote of the delegates, all election issues were closed. There was, as of June 21, no further remedy under the UAW Constitution.

The Convention is the highest body in the International Union. Under Article 7, Section 1(a) of the UAW Constitution, neither the International Executive Board, not the Convention Appeals Committee, nor the International President has authority to entertain any appeal from the action of the Convention.

Your letter is, for these reasons, both untimely and improper, as these matters were closed on June 21, 1989.

DeRossett and Neese filed complaints with the Secretary of Labor on September 20 and 22, 1989, respectively. After allegedly encountering resistance from the UAW to her investigation of the complaints, the Secretary brought this civil action in the district court on January 31, 1990.

Following discovery, the parties filed cross-motions for summary judgment. The district court denied the Secretary's motion and granted summary judgment to the UAW, adopting the union's argument that, under article 8, section 17 of the UAW Constitution, all internal appeal procedures and remedies available to DeRossett and Neese expired on June 21, 1989. Based on this decision, the district court held that Neese's September 22, 1989 complaint to the Department of Labor was untimely.

Section 402(a), in pertinent part, provides:

A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary *within one calendar month thereafter* alleging the violation of any provision of section 481 of this title....

29 U.S.C. § 482(a) (emphasis added).

The district court also determined that while DeRossett's July 19, 1989 written complaint to the OLMS met the one-month requirement of section 402(a), the Secretary's January 31, 1990 complaint, based on DeRossett's protest, was untimely under section 402(b). This section provides:

The Secretary shall investigate such complaint and, if [s]he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, [s]he shall, *within sixty days after the filing of such complaint, bring a civil action against the labor organization* ... to set aside the invalid election, if any, and to direct the conduct of an election ... under the supervision of the Secretary....

29 U.S.C. § 482(b) (emphasis added). Because the district court disposed of the Secretary's action on these procedural grounds, it did not reach the other issues raised by the parties in their respective motions for summary judgment.

On appeal, the Secretary challenges the district court's determinations of these procedural matters and its interpretation of the exhaustion requirements established by the UAW Constitution and section 402 of the Act.

## II.

A district court's order granting summary judgment is reviewed de novo. *Leila Hosp. & Health Ctr. v. Xonics Medical Sys., Inc.*, 948 F.2d 271, 274 (6th Cir.1991). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a

judgment as a matter of law." Fed. R.Civ.P. 56(c).

## III.

There are three procedural requirements that condition the Secretary of Labor's right to bring this enforcement action against the UAW. As correctly noted by the district court, section 402 requires "(1) that DeRossett and Neese exhausted their internal remedies under the UAW Constitution; (2) that DeRossett and Neese filed complaints with the Secretary within one calendar month; and (3) the Secretary brought a lawsuit within 60 days after the complaints were filed." We address these requirements in order.

## A.

In enacting Section 402 and the rest of the Act, Congress expressed its "concern for the need to remedy abuses in union elections without departing needlessly from the longstanding congressional policy against unnecessary governmental interference with internal union affairs." *Hodgson v. Local Union 6799, United Steelworkers*, 403 U.S. 333, 338, 91 S.Ct. 1841, 1845, 29 L.Ed.2d 510 (1971). Thus, unions are given "the first opportunity to put their own house in order," *Brock v. International Union of Operating Eng'rs, Local 369*, 790 F.2d 508, 512 (6th Cir.1986), and "[t]he Secretary cannot make an investigation or file a civil suit in the federal courts unless there is a valid complaint by a union member, *i.e.*, a complaint that is made after the member has exhausted his internal union remedies." *Hodgson v. District 6, United Mine Workers*, 474 F.2d 940, 944 (6th Cir.1973).

The first issue we address is whether DeRossett and Neese exhausted their internal union remedies prior to filing complaints with the Secretary. The union claims that article 8, section 17 of the UAW Constitution establishes the internal remedies available to DeRossett and Neese for challenging Bowling's election and that they failed to exhaust these procedures, with the result that their complaints filed with the Secretary of Labor were improper as well as untimely.

Article 8, section 17 of the UAW Constitution provides:

(a) The International Executive Board shall select from the credentials of delegates a Credentials Committee, which shall assemble at least ten (10) days prior to the meeting of the Convention. The Committee shall examine all credentials received at the International Office and investigate the standing of the delegates and the Local Unions they represent; they shall receive the original credentials of the delegates elected to attend the Convention, and be in a position to report at the opening of the Convention.

(b) If the Credentials Committee should decide that an election in any Local Union has been improperly conducted and that delegates elected in such election should not be seated, the Credentials Committee may, jointly with the International President, when s/he is satisfied that the necessary Constitutional interpretations have been reasonably applied, order the delegate election to be rerun in such Local Union prior to the opening of the Convention. This rerun of the initial election shall be supervised by a Sub-Committee of the Credentials Committee. All notices and other time limitations provided for in this Constitution shall be automatically waived for any such rerun election, provided that every effort shall be made to give the maximum notices permitted by the circumstances.

(c) If the Convention approves the Credentials Committee's report and recommendation on the initial election, the delegates elected in the rerun shall be seated if confirmed by the Credentials Committee and Convention. If the Convention should reverse the Credentials Committee and approve the initial election, the delegates elected in such initial election shall be seated and the International Union shall reimburse the Local Union for the cost of rerunning the election.

(d) If, prior to the holding of an election of delegates, a clear violation of the International Constitution or the Local Union's Bylaws occurs in the pre-election

procedures, the International President shall have the authority to order a correction of the violation prior to the holding of the election. Such action by the International President is subject to appeal to the Credentials Committee.

The UAW argues that, according to the dictates of article 8, section 17, DeRossett and Neese were required to bring their grievances concerning the conduct of Bowling's campaign to the Credentials Committee or, alternatively, the convention floor, and having failed to do either, they cannot complain of election campaign abuses. We note, however, that in offering its interpretation of the UAW Constitution, the union relies not so much on the specific language of article 8, section 17 as on various pronouncements of the UAW Public Review Board and historical accounts by UAW officials of the union's past convention and election practices. For example, the UAW relies heavily on the statements of its former president, Leonard Woodcock, to support its contention that DeRossett and Neese were required to voice their complaints to the convention and the Credentials Committee. In a declaration attached to the UAW's motion for summary judgment, Woodcock states:

[W]here the challenge is directed—not to a Local's delegate election—but more generally to the conduct of the campaign ... [t]he candidate, his supporters, or any member of the Credentials Committee itself can put the matter directly before the Credentials Committee. In fact, at the 1947 Convention, ... I personally raised such a challenge....

When the Convention acts on the Credentials Committee's report, whatever that action may be, all issues of the qualifications of the Delegates and of their warrant to vote, are closed. There is no further appeal under the UAW CONSTITUTION, and its convention system.

The district court essentially adopted the UAW's argument that article 8, section 17

applied to the election protests raised by DeRossett and Neese; but rather than concluding that the Secretary was foreclosed by the complainants' failure to exhaust internal remedies, as suggested by the union, the court held instead that DeRossett's and Neese's union remedies had been exhausted on June 21, 1989, following the election of Bowling by delegates to the UAW Convention, and that the time limitations set forth in sections 402(a) and 402(b) were to be counted from that date.

The Secretary argues that the district court erred in determining that article 8, section 17 controlled the type of election protest at issue in this case. She argues that this provision addresses only the matter of credentials and election of convention delegates and is not relevant to protests such as those lodged by DeRossett and Neese, directed at the improper and illegal use of union resources during the conduct of an incumbent's campaign for union elective office.

■ We agree with the Secretary that the union has failed to demonstrate that there are any "remedies available under the [union] constitution and bylaws" responsive to protests involved in this case: the alleged misuse of union resources in an election campaign. Article 8, section 17 is concerned primarily with challenges to *delegate credentials*, that is, the "standing of the delegates and the Local Unions they represent," and procedures for resolving credentials challenges at the union convention. The provisions of article 8, section 17 of the UAW Constitution do not address complaints concerning the conduct of election campaigns for office of regional director, or the specific issues raised by union members DeRossett and Neese and by the Secretary. We find the UAW's efforts to fit the challenges in this case into the remedial provisions of article 8, section 17, as augmented by the opinions of Presidents Woodcock and Bieber, lack any support in the text of the UAW Constitution.[3] Simply

---

**3.** While we agree with the UAW that a union's interpretation of its own constitution is entitled to deference as long as it is not unfair or unreasonable, *Millwright Local 1079 v. United Bhd. of*

*Carpenters,* 878 F.2d 960, 962 (6th Cir.), *cert. denied,* 493 U.S. 965, 110 S.Ct. 407, 107 L.Ed.2d 373 (1989), our determination of the matters raised in this case requires the proper interpre-

put, of all the arguments presented by the union, none establishes that article 8, section 17 addresses the illegal use of union resources to promote the campaigns of candidates for elective union offices. Rather, the provisions of section 17 cited by the union are concerned with local delegate elections or the warrant of delegates to vote at the convention.[4]

Moreover, even if we were to find article 8, section 17 somehow relevant to the protests filed by DeRossett and Neese, such a conclusion would not alter the result in this case, for even if the proposed remedies were theoretically "available" to union members protesting the misuse of union resources in an election campaign, they still could not be deemed legally sufficient. This court recently described a union's explicit seventy-two hour time limit for challenging the conduct of an election as being "of such brevity as to approach rendering the opportunity for internal redress illusory...." *Martin v. Local 480, Int'l Bhd. of Teamsters*, 946 F.2d 457, 463 (6th Cir.1991). We think such reasoning applies even more forcefully to the asserted remedy proposed by the UAW in this case. Thus, even were we to accept that article 8, section 17 of the UAW Constitution addresses campaign protests of the sort raised here, we still could not conclude that the procedures, which require that members bring such complaints to the Credentials Committee or the convention floor, are "real, not illusory." *Id.*

In this respect, we also note that section 402 provides *postelection* remedies and does not require a union member to ex-

haust remedies prior to an election. *See Wirtz v. National Maritime Union*, 284 F.Supp. 47, 58 (S.D.N.Y.), *aff'd*, 399 F.2d 544 (2d Cir.1968). The procedural scheme of section 402 is consistent with the Act's requirement that the court find that the alleged section 401 violation "may have affected" the outcome of the union election before declaring void the results of that election. 29 U.S.C. § 482(c). The UAW's "remedy" under article 8, section 17, however, would force union members to lodge their protests to violations of section 401's election procedure requirements prior to, or at the time of, an election. The proposed remedy is thus futile, for the determination required by section 402(c)—that a violation have "affected" the results of a union election—is possible, of course, only after the election has occurred. For these reasons, we conclude that the procedures proposed by the UAW are not only unresponsive to the type of protest at issue in this case, but insufficient for purposes of, and inconsistent with, federal law. *See Wirtz v. Local Union No. 125, Laborers' Int'l Union*, 389 U.S. 477, 484, 88 S.Ct. 639, 642–43, 19 L.Ed.2d 716 (1968).

We find it unnecessary to decide whether, given the absence of any internal union procedures for complaints of the sort involved in this case, the complainants, and hence the Secretary, are excused from compliance with the exhaustion requirements of section 402, for it is undisputed that DeRossett and Neece took reasonable, and reasonably timely, steps to obtain a resolution of their grievances within the union. As we have said, DeRossett presented his complaint to UAW President Bieber in a

tation not only of the union's exhaustion procedures, but of the dictates of federal law as well. On the latter issue, of course, we owe no deference to the UAW. As we have stated before, "[t]he fact that it is reasonable for the convention to have the final say within the union does not mean that the convention, when it speaks for the union, can countermand the directives of Congress." *Local 594, UAW v. International Union, UAW*, 956 F.2d 1330, 1336–37 (6th Cir. 1992).

**4.** At oral argument, the UAW stressed that the remedy sought by the Secretary included a rerun of delegate elections as well as a new election for the post of regional director. The un-

ion argues that this fact converts the Secretary's action into a challenge to the authority of the delegates to vote, a matter clearly addressed in article 8, section 17 of the UAW Constitution. We reject this argument. The complaints which serve as the basis for the Secretary's action are not directed at the credentials of convention delegates, but at the conduct of an incumbent union official's campaign for elective office. While the remedy for the alleged violations of section 401(g), 29 U.S.C. § 481(g), may include new elections of delegates in the local unions, the Region 2–A delegates' credentials, and their warrant to vote at the 1989 convention, are not at issue in this case.

letter dated July 6, 1989, addressed to the Union Convention Appeals Committee and the International Executive Board, and Neese wrote a letter of complaint to President Bieber and to the UAW Executive Board on August 18, 1989. Under the circumstances presented in this case, we believe the efforts of these union members at obtaining internal resolution of their complaints were sufficient to meet the exhaustion requirements of section 402(a). A similar conclusion was reached in *Donovan v. Sailors' Union,* 739 F.2d 1426, 1428 (9th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 160 (1985), in which the court held that where a union member "lacked guidance on how to present his challenge," a letter of protest sent to the union president was "reasonable under the circumstances" and was an adequate attempt to invoke union remedies.

### B.

■ The next issue involves the timeliness of DeRossett's and Neese's complaints filed with the Secretary. Section 402(a) permits union members who have invoked and exhausted available internal remedies, or attempted to do so without obtaining a final decision within three calendar months after their invocation, to "file a complaint with the Secretary *within one calendar month thereafter* alleging the violation of any provision of section 481 of this title...." 29 U.S.C. § 482(a) (emphasis added).

The district court, after finding that the union members' internal remedies under the UAW constitution expired on June 21, 1989, held that Neese's August 18, 1989 letter to President Bieber was untimely under the one calendar month requirement of 29 U.S.C. § 482(a). The district court concluded, however, that DeRossett's initial "complaint" to the Cleveland OLMS on July 6, 1989 was timely.

We have determined that the UAW Constitution provides neither available nor responsive internal remedies to the sort of protest lodged in this case, and that the union members' protest letters to UAW President Bieber were sufficient, for pur-

poses of federal law, to invoke and exhaust internal union remedies under the facts of this case. The union members' internal remedies did not, therefore, expire on June 21, 1989. Rather, we believe the only reasonable date to mark the exhaustion of union remedies is August 24, 1989, when President Bieber sent letters to DeRossett and Neese explaining that the UAW considered "all election issues ... closed" and the protest letters "untimely and improper." At that time, DeRossett and Neese, having unsuccessfully attempted to invoke their internal remedies, were permitted to file complaints with the Secretary of Labor, and the Secretary was free to investigate the matter and file a civil action seeking to nullify the election results and conduct new elections.

DeRossett's complaint to the Secretary was filed on September 20, 1989, and Neese's two days later. Thus, both complaints were received by the Secretary "within one calendar month" of August 24, 1989, when the union members exhausted internal remedies, and timely filed under section 402(a).

### C.

The question remains, however, whether the Secretary's complaint in the district court was timely. Section 402(b) provides that "[t]he Secretary shall investigate such complaint and, if [s]he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, [s]he shall, *within sixty days after the filing of such complaint,* bring a civil action against the labor organization...." 29 U.S.C. § 482(b) (emphasis added).

■ The union members' complaints were filed on September 20 and 22, 1989, but the Secretary did not bring this action in the district court until January 31, 1990, over 120 days later. The Secretary asserts that she encountered significant delays in determining whether there existed probable cause to believe that the campaign for Region 2–A director had been conducted in violation of federal law, and that these delays were caused by the UAW's resist-

ance to her investigation of the matter. If these assertions prove accurate, section 402(b)'s sixty-day time limit may be tolled. *See, e.g., Brock v. American Postal Workers Union, Chicago Local,* 815 F.2d 466, 470 (7th Cir.1987); *Hodgson v. International Printing Pressmen,* 440 F.2d 1113, 1118–19 (6th Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971).

The tolling issue was not addressed by the district court. The questions raised by the Secretary concerning the UAW's alleged resistance to her investigation and the subsequent delay in the Secretary's filing of this civil action, and the factual findings necessary to meaningful determination and review of these issues, are therefore not properly presented in this appeal. On remand, the district court should conduct a hearing on these issues and make findings of fact and conclusions of law concerning the timeliness of the Secretary's complaint, in light of our holding today.

### IV.

The district court erred in determining that internal union remedies to appeal the election of Region 2–A director expired upon completion of the voting at the UAW Convention on June 21, 1989. In the absence of any available or responsive internal procedures in the UAW Constitution for challenging the conduct of an election campaign, we deem the complainants' protest letters sent to the union president sufficient to invoke and exhaust internal remedies for purposes of 29 U.S.C. § 482(a). On remand, however, the question of alleged dilatory tactics by the UAW, as they relate to the Secretary's timely filing of this civil action, must be addressed to determine whether the case was brought in compliance with the sixty-day requirement of 29 U.S.C. § 482(b).

The judgment of the district court is REVERSED and this case REMANDED for further proceedings consistent with this opinion.