Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

BLASTERS, DRILLRUNNERS AND MINERS UNION, LOCAL NO. 29, Laborers' International Union of North America, AFL–CIO, CLC, Defendant.

No. 78 Civ. 4619 (RWS).

United States District Court, S. D. New York.

May 6, 1981.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for plaintiff by Nancy E. Friedman, Asst. U. S. Atty., New York City, of counsel.

Corcoran & Brady, P. C., New York City, for defendant by Robert D. Brady, New York City, of counsel.

Hall, Clifton & Schwartz, New York City, for Applicant to Intervene by Burton H. Hall, New York City, of counsel.

## OPINION

SWEET, District Judge.

This is an action initiated by the Secretary of Labor (the "Secretary") in September, 1978 against the Blasters, Drillrunners and Miners Union, Local # 29, AFL–CIO ("Local 29"), under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA" or the "Act").[1] The Secretary moves under § 402(c) of the Act, 29 U.S.C. § 482(c), for an order declaring the April, 1980 supervised election null and void and requiring that another election— the next regularly scheduled election on May 30, 1981—be held under supervision. Local 29 opposes the motion, and cross-moves for an order directing the Secretary to certify the results of the April, 1980 election. For the reasons set forth below, the motion and the cross-motion will be denied.

On April 27, 1980, Local 29 held an election supervised by the Secretary under LMRDA, 29 U.S.C. § 482, pursuant to a January 31, 1980 order of this court reflecting findings of certain violations of 29 U.S.C. § 481 which may have affected the outcome of the previous election. The candidates on the incumbent Administrative Party slate were elected. On May 3, 1980, two unsuccessful opposition candidates for office, including Charlie Smith ("Smith"), the union member who had filed the protest on the previous election pursuant to which the Secretary originally filed suit, 29 U.S.C. § 482(a), filed a protest alleging numerous violations of the Act in the April, 1980 election. Following investigation, the Secretary has concluded that none of the alleged violations raised in the protest are actionable, but that moneys of an employer were used to support the incumbents in violation of § 481(g).

After the motions relating to the elections were argued, Smith moved to intervene under Fed.R.Civ.P. 24(a), specifically to join the Secretary in opposing certification of the April 1980 election and to

---

1. Ray Marshall, the Secretary of Labor at the time the action was filed, was the original named plaintiff. Raymond J. Donovan, the new Secretary, replaces him as plaintiff herein.

suggest injunctive and other remedies to protect the rights of Local 29 members and opposition candidates in connection with a new supervised election and against reprisals.[2] The proposed intervention by a union member in an action brought by the Secretary challenging a regular, unsupervised election would not extend the scope of the inquiry beyond violations pressed by the Secretary, *Trbovich v. United Mine Workers*, 404 U.S. 528, 536–37 & n.8, 92 S.Ct. 630, 635–36 & n.8, 30 L.Ed.2d 686 (1972), and no authority has been presented or discovered to broaden that scope following a supervised election. *Compare Usery v. Local Union No. 639, Int'l. Bhd. of Teamsters*, 543 F.2d 369, 376–77 & n.15 (D.C.Cir. 1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977). In any event, Smith has not reasserted here the many grounds for overturning the April, 1980 election which the Secretary rejected; he only seeks certain remedies, in connection with the anticipated order for a new supervised election. Under the particular circumstances here, this motion is denied as well.

The only allegation of wrongdoing in the April, 1980 election presently before the court therefore is that pressed by the Secretary. The Secretary's investigation disclosed that moneys of an employer were used to support the Administration Party in violation of § 401(g) of the Act, 29 U.S.C. § 481(g). That section provides, in pertinent part:

> No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election subject to the provisions of this subchapter.

It is undisputed that one of the Administration Party candidates got permission to, and did, use the photocopier of his brother-in-law, Carmine Buonanno, to reproduce 100 copies of a five-page campaign letter attacking the leadership of the opposition and

100 copies of a "palm card" containing the names and membership background of the Administration Party candidates. These candidates did not pay the cost of the copying—approximately $60—and no such service was provided to the opposition. The letters were mailed to certain union members, and the palm cards were distributed outside the polling place on election day. Buonanno's business, an unincorporated proprietorship, has three employees and repairs tools and equipment for construction companies. Buonanno asserts by affidavit his ignorance of the campaign nature of the materials copied, as well as repayment of the $60 by his brother-in-law, James Lauer, the Local 29 officer who did the copying. No evidence was presented to establish that Lauer knowingly violated the Act, and indeed an inference can be drawn from all the circumstances that the violation was unwitting. Finally, it is asserted by the Secretary and by certain opposition candidates that no complaint was made to the Secretary regarding this alleged violation of § 481(g) because the opposition did not know and could not have known of it.

■ I conclude that Buonanno is an "employer" and therefore his contribution to the Administration Party candidates is a violation of § 481(g) regardless of his knowledge of the use to which his photocopier was being put, and despite the absence of any relationship between his firm and Local 29 or any other union. *See Marshall v. Local Union 20, Int'l Bhd. of Teamsters*, 611 F.2d 645 (6th Cir. 1979). *But see Hall v. Marshall*, 476 F.Supp. 262, 270–71 (E.D. Pa.1979), *aff'd. mem.* 622 F.2d 578 (3d Cir. 1980). I also conclude that the challengers are excused from any § 481(a) exhaustion requirement, *see Hodgson v. Local Union 6799, United Steelworkers of America*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), because they did not know and could not have known of this violation. Further, there is a reasonable basis for the Secretary's conclusion that the violation may have affected the outcome of the supervised

---

**2.** Smith seeks specific remedial relief on behalf of four members of Local 29 and opponents of the incumbent regime—Mario Montuoro, Willie

Barnes, Shellie Barnes and Lewis Flowers—in connection with an anticipated order by this court providing for a new supervised election.

election. *See Usery v. Local Union No. 639, supra,* 543 F.2d at 379–81; *Marshall v. Local 1010, United Steelworkers,* 498 F.Supp. 368, 376–77 (N.D.Ind.1980); *Brennan v. Sindicato Empleados de Equipo Pesado,* 370 F.Supp. 872–879 (D.P.R.1974). However, the terms of § 482(c) and the particular circumstances presented here serve to defeat the Secretary's motion for supervision.

The statutory provisions of § 482 set forth the procedures only for a "first round" supervised election, including a complaint, exhaustion, the commencement of an action by the Secretary within sixty days, a court determination and a supervised election, and conclude with the direction that:

> [t]he Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization.

The courts, sensibly enough, have concluded that this language does not mandate certification if the supervision of an election reveals an actionable violation of the statute. *E. g. Brennan v. Sindicato Empleados, supra,* 370 F.Supp. at 880; *Hodgson v. Chain Service Restaurant Luncheonette & Soda Fountain Employees Union,* 355 F.Supp. 180, 188–89 (S.D.N.Y.1973). The wrongful expenditure here, though de minimis, is nonetheless a violation of § 481(g). *Marshall v. Local Union 20, supra,* 611 F.2d at 651–52. Further, no showing has been made sufficient to counter that of the Secretary to the effect that the "tainted" campaign material may have influenced the outcome of the election.

At the same time, while the court's scope of review of the Secretary's determination with respect to a supervised election is limited, the statute does not assign to the court a simple rubber-stamping function. *Usery v. Local Union No. 639, supra,* 543 F.2d at 375–79; *Hodgson · v. Carpenters Resilient Flooring Union,* 457 F.2d 1364, 1368–70 (3d Cir. 1971); *Hodgson v. Chain Service, supra,* 355 F.Supp. at 188–89.

Given the Secretary's showing, had he moved sooner for the relief here sought, the court might be constrained to oblige. However, I find that the Secretary has not acted "promptly" following the April, 1980 election, as § 482(c) directs.

■ The Act is silent as to the time within which the Secretary must seek a second supervised election, and no cases have been referred to, prior to this one, where the issue has arisen. The logical interpretation would require action "promptly," perhaps indeed within sixty days should the symmetry of the procedure relating to the "first round" election be preserved. Both § 482 time provisions—that directing promptness following a supervised election and that contained in § 482(b) directing the Secretary to act within sixty days on an original protest of a union member—must be understood as in furtherance of the statutory purpose to insure expeditious and effective resolution of union election disputes and irregularities. In other words, "Congress wished to maximize union democracy at minimal cost to union effectiveness." *Usery v. Local Union No. 639, supra,* 543 F.2d 374, 378–79 & n.20; *Marshall v. Local Union 1374, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO,* 558 F.2d 1354, 1357–58 (9th Cir. 1977); *see generally Wirtz v. Local 153, Bottle Blowers Ass'n,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). To be sure, the sixty-day provision is not applied mechanically in frustration of the statutory intent to protect union democracy, *Marshall v. Local Union 1374, supra,* nor should the statutory directive for prompt action by the Secretary following a supervised election be given an overly restrictive interpretation.

■ Nevertheless, an election supervised by the Secretary enjoys a presumption of fairness and regularity. *See Usery v. Local Union No. 639, supra,* 543 F.2d at 377, 379. Here, on March 20, 1981, almost a year after the supervised election on April 27, 1980, the Secretary moved to set aside that election on the ground of a sole violation described above. The violation must be considered "technical" in the sense that the wrongful expenditure was minimal, the of-

fending employer is a small firm with no demonstrated relation to the union, and no evidence indicates anybody's awareness of wrongfulness or any realization on the part of the union members exposed to this campaign literature that it was copied at the expense of an employer. *See id.* at 381. Moreover, the Secretary has offered no explanation for the delay.

Whatever timetable for action by the Secretary might be appropriate following a supervised election, an unexplained delay of eleven months until the eve of the next anticipated election contravenes the spirit of the Act, particularly when the next regularly scheduled election will take place in less than a month. Therefore, the motion of the Secretary is denied for failure to comply with the time requirements contained in the Act. However, given the existing violation of the Act, the court will not direct the Secretary to certify the results of the last election under these circumstances, and the cross-motion seeking such relief will also be denied. The motion to intervene is denied as well. In view of the denial of the Secretary's motion, the Act does not provide for the additional remedies proposed by Smith for implementation in conjunction with a new supervised election.[3]

IT IS SO ORDERED.

---

**3.** In a reply affirmation and memorandum filed on May 4, Smith urges that even if the motion of the Secretary is to be denied, this court should exercise pendent jurisdiction to adjudicate Smith's claim under applicable state law. He cites *Libutti v. DiBrizzi*, 343 F.2d 460 (2d Cir. 1965). Although the next election draws near, the court declines to exercise such jurisdiction. Even if it might be said under the circumstances that the federal claim and the state claim Smith now urges derive from a common nucleus of operative facts, *see Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228, 1247 (2d Cir. 1979), Smith did not raise the state law claim in his proposed pleading. Moreover, he apparently has not exhausted union remedies. Finally, Smith's claims relating to the eligibility of Messrs. Montuoro, Barnes and Barnes for candidacy appear to have been resolved in open court on April 30. All things considered, including the denial this day of the Secretary's motion relating to the last election, I conclude that Smith's motion to intervene under the authority of *Trbovich v. United Mine Workers, supra*, is an inappropriate vehicle for belatedly raising state law claims addressed to anticipated unfair or unlawful actions by Local 29 relating to the upcoming election.