Raymond J. DONOVAN, Secretary of Labor, U.S. Department of Labor

v.

LOCAL 738, INTERNATIONAL UNION UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL–CIO.

Civ. No. JH–81–3316.

United States District Court, D. Maryland.

Sept. 22, 1983.

Dale J. Belock and Dept. of Labor, Philadelphia, Pa., for plaintiff.

Bernard G. Link, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JOSEPH C. HOWARD, District Judge.

This action is brought by the Secretary of Labor ("the Secretary") against Local 738, International Union United Automobile, Aerospace and Agricultural Implement Workers of America ("Local 738") under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.* ("LMRDA" or "the Act"). The Secretary moves under LMRDA § 402(c), 29 U.S.C. § 482(c), to have the defendant's June 27, 1981 run-off election for the offices of President; Vice-President and Sergeant-at-Arms, set aside, and for an order directing the defendant to conduct a new election for these offices under the Secretary's supervision. This case was heard without a jury. The Court's findings of fact and conclusions of law follow.

### Background

Daniel Gromacki, a member of Local 738 and the losing candidate in the run-off election for the office of President, filed a complaint with the Secretary charging, *inter alia,* that the union's copier had been used to duplicate literature for the candidates on the successful Solidarity Slate team, in violation of Section 401(g) of the Act, 29 U.S.C. § 481(g).[1] Upon completing an investigation of the complaint, the Secretary found probable cause for believing that a violation had in fact occurred, and subsequently filed this action.

At the close of the plaintiff's case, the Court granted the Secretary's motion to amend his complaint to additionally charge the use of the employer's typewriter and duplication equipment to promote the candidacy of the Solidarity Slate, also in violation of 29 U.S.C. § 481(g).

### Discussion

#### A. Motion to Strike

██ Preliminarily, the Court notes that the defendant's motion to strike the government's Exhibit 18, upon which a ruling was reserved, is now ripe for resolution.

The Court finds that the exhibit entitled, "Report of Investigation," is inadmissible in that it contains a hearsay statement by Ms. Carolyn Forrest, Administrative Assistant to the President of the International, which does not fall within any exception to the hearsay rule. Specifically, the statement is not admissible under Fed.R.Evid. 801(d)(2)(C) or (D) as the Secretary urges. That rule provides that statements may come in against a party-opponent if made by one authorized to speak for that party or if made by an agent or employee acting within the scope of his employment. Ms. Forrest may in fact be authorized to speak on behalf of the International as an Assistant to the President, however, the International was not made a party to this action and the rule is inapplicable to them. There is no evidence that Ms. Forrest was in any way authorized to speak for Local 738, the party-opponent within the meaning of the

---

1. Section 481(g) provides:

    (g) No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

rule, and her statement cannot therefore be used against it.

Accordingly, for the aforestated reasons, the defendant's motion to strike is *granted*.

## B. *Exhaustion*

■ The defendant argues initially that the exhaustion requirement of 29 U.S.C. § 482(a)[2] have not been complied with and that this Court therefore lacks jurisdiction to decide the matter now pending before it. For reasons which follow, this argument is rejected.

The procedures governing internal resolutions of union election grievances are found in Article 38, Section 11, of the International's Constitution which provides that, "No protest to an election shall be considered unless raised within seven (7) days of the closing of the polls or at the next membership meeting whichever is later." The run-off election was held on June 27, 1981. The next membership meeting took place on July 11, 1981. Gromacki did not protest the election until July 15, 1981, when he wrote to Douglas Fraser, President of the International, and again on September 12, 1981, at the second membership meeting following the election. The protest in both instances was denied as untimely.

Admittedly, Gromack's grievance was not filed within the time prescribed by the Constitution. However, it is his contention that he did not become aware of the alleged infraction until after the July membership meeting when he compared the meeting's agenda with Solidarity Slate campaign literature he had previously collected and stored in his home. Upon comparing the copies, Gromacki testified he noted that identical speck marks appeared on the agenda and the literature, suggesting that they had been duplicated on the same machine. The Secretary argues that Gromacki's inability to discern the alleged violation until after the union's grievance deadline had expired should excuse his failure to invoke internal union remedies in a timely fashion.

Although the defendant challenges Gromacki's version of the timing of his discovery, the Court sees no reason for disbelieving it. Moreover, the Court is in agreement with the Secretary and finds that the strict enforcement of the union deadline unfairly deprived Gromacki of his right to invoke internal remedies. The Court finds further that inasmuch as Gromacki took steps to inform both the International and Local 738 of the alleged improprieties, the goals of the exhaustion requirement—to give a union notice of a member's grievance and the first opportunity to redress it—have been met. *Hodgson v. Local Union 6799*, 403 U.S. 333, 340, 91 S.Ct. 1841, 1846, 29 L.Ed.2d 510 (1971); *Wirtz v. Local Union No. 125, Laborers' International Union of North America, AFL–CIO*, 389 U.S. 477, 484, 88 S.Ct. 639, 642, 19 L.Ed.2d 716 (1968). Also bearing upon the Court's decision to excuse the exhaustion requirement in the instant case are the facts that the nature of the alleged impropriety is such that it may not become evident for some time following an election and an absence of evidence in the record that Gromacki was dilatory in reporting his discovery.

Finally, the Court finds that the complaint to the Secretary was timely filed since more than three months elapsed between the filing of the grievance with the

**2.** Section 482 provides in pertinent part:
    (a) A member of a labor organization—
    (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
    (2) who has invoked such available remedies without obtaining a final decision with three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

International and the filing of the complaint, without a final decision being rendered.

Likewise, with regard to the allegation that the employer's machine was improperly used, the Court concludes that Gromacki is excused from the exhaustion requirement because he did not know and could not have known of the violation. *Donovan v. Blasters, Drillrunners and Miners Union Local No. 29, Laborers' International Union of North America, AFL–CIO,* 521 F.Supp. 595 (S.D.N.Y.1981). *See Hodgson v. Local Union 6799, supra.* The alleged impropriety was first brought to the Secretary's attention at the deposition of Herbert Clear, who was a run-off candidate for Vice-President of Local 738; a post he succeeded in capturing. At his deposition, and again at trial, Clear testified that prior to the run-off election he typed a letter of endorsement of the Solidarity Slate (hereinafter "the Woody letter") from an unsuccessful candidate in the first election on the company's typewriter, and that he made several hundred copies of the letter on the company's machine. Gromacki was not privy to this information, and therefore could not have filed a grievance with the union concerning the infraction.

C. *29 U.S.C. § 481(g)*

■ In order to prevail in this enforcement action, the Secretary must prove by a preponderance of the evidence that a violation of Section 481(g) has occurred. Clear's admission that he used the employer's equipment to type and reproduce partisan campaign literature definitely establishes a violation. Knowledge or intent on the part of the employer is not required. *Donovan v. Local Union 70, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 661 F.2d 1199, 1202 (9th Cir.1981). A proved violation of Section 481 establishes a prima facie case that the violation may have affected the outcome of the election. *Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, 506–07, 88 S.Ct. 1743, 1751–52, 20 L.Ed.2d 763 (1968).

In the absence of any rebuttal evidence, the Court must conclude that the outcome of the election may have been affected.

■ In contrast, the Court finds that the Secretary has not met his burden of proving that union equipment was used in violation of the Act. The Secretary satisfactorily established through the testimony of F.B.I. document expert Peter Linder that the speck marks appearing on the campaign literature and official union documents originated from the same photocopier source. It was further established that the union's photocopier was the source responsible for the speck marks. However, it is not apparent from the record that the campaign literature from Gromacki's collection was reproduced prior to the run-off election and distributed to the electorate as would seemingly be required to prove a violation of the Act in this instance.

Accordingly, the evidence does not support a finding that the union's photocopier was used to promote the candidacy of any person, in violation of Section 481(g). However, having previously found that a violation of the Act occurred when the employer's equipment was used in aid of the Solidarity Slate's campaign and that said violation may have affected the outcome of the June 27, 1981 run-off election, it is this 22nd day of September, 1983, by the United States District Court for the District of Maryland,

ORDERED AND ADJUDGED:

1) that said election be declared void;

2) that a new election for the offices of President, Vice-President and Sergeant-at-Arms of Local 738 be conducted under the supervision of the Secretary, in conformity with the Constitution and By-Laws of the union; and

3) that the Clerk of the Court mail copies of this Memorandum and Order to all parties of record.