Robert B. REICH, Secretary of
Labor, U.S. Department of
Labor, Petitioner,

v.

LOCAL 890, INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS, AFL–
CIO, Defendant.

No. C–95–20384–EAI.

United States District Court,
N.D. California,
San Jose Division.

June 25, 1996.

Daniel W. Teehan, Regional Solicitor, Susan Gillett–Kumli, Attorney, Office of the Solicitor, United States Department of Labor, San Francisco, CA, for Petitioner.

Duane B. Beeson, Tod A. Cochran, Beeson, Tayer & Bodine, San Francisco, CA, for Defendant Local 890.

MEMORANDUM AND ORDER
DISMISSING PETITIONER'S
COMPLAINT

INFANTE, United States Magistrate Judge.*

## I. INTRODUCTION

The Secretary of Labor initiated this suit pursuant to Title IV of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* (hereinafter the "Act" or "LMRDA") against defendant Local 890, International Brotherhood of Teamsters, AFL–CIO ("Local 890" or "Union"), alleging that the Union violated section 401(g) of the Act by utilizing an employee payroll deduction system for campaign contributions. The Secretary moves for summary judgment, re-

---

* The parties have consented that all proceedings in the above entitled case may be heard and finally adjudicated by the assigned magistrate judge pursuant to Rule 73, Fed.R.Civ.P. and 28 U.S.C. Section 636(c).

questing that the court declare the September 1994 election results null and void, and direct a new election of officers under the Secretary's supervision pursuant to 29 U.S.C. § 482(c). The Union opposes the motion and cross moves for summary judgment in its favor, asserting, *inter alia,* that the Secretary is precluded from challenging the payroll deduction system because the complainant failed to exhaust her internal union remedies.

## II. UNDISPUTED FACTS

Defendant Local 890 is a local labor organization within the meaning of the Act. It maintains its principal office in Salinas, California, and is affiliated with the International Brotherhood of Teamsters. The Union's elections are held triennially pursuant to the Constitution of the International Brotherhood of Teamsters and the local bylaws.

In August 1992, the Local 890 Executive Board passed a resolution allowing employees to designate payroll deductions for any purpose. The minutes of the Executive Board meeting state:

> The Executive Board approved a proposal to allow staff to designate payroll deductions for any purpose, with the condition that if the deduction related to union politics the union must be reimbursed for the bookkeeper's time.

The minutes were read and approved at the subsequent general membership meeting, and thereafter were available for review by any Union member at the Union's Salinas office.

During 1993 and 1994, many of the Union's business agents authorized payroll deductions to contribute money to the incumbent officers' campaign fund. The incumbent officers raised $17,442.00 through this payroll deduction system, which financed the incumbents' entire 1994 reelection campaign at a cost of approximately $12,500.00. The incumbents' campaign fund fully reimbursed Local 890 for the office bookkeeper's time in administering the payroll deduction program.[1]

Guillermina Garnica, an unsuccessful challenger to the incumbent president, protested the election to the appropriate intermediate body within the International Brotherhood of Teamsters, Joint Council No. 7[2], and subsequently to the International Brotherhood of Teamsters.[3] Pursuant to 29 U.S.C. § 482(a)(2), Guillermina Garnica filed a timely complaint with the Secretary of the Department of Labor asserting "allegations regarding section 401(g) that were specific to the use of union membership lists and campaigning by Business Agents on union time."[4] Although the Secretary did not confirm any of Ms. Garnica's allegations, the Secretary determined that the Union had violated section 401(g) of the Act by utilizing the payroll deduction system for campaign contributions.

Ms. Garnica was unaware of the Union's payroll deduction system prior to the Secretary's investigation, and thus at no time challenged the system during her internal Union protests. However, the payroll deduction system was well known to other Union members. In particular, at least two business agents representing Ms. Garnica and other Union members who worked at the Bud Antle company in Salinas used the payroll deduction system to contribute to the incumbent officers' slate.[5] In addition, at least three of Ms. Garnica's fellow rank and file Union members at Bud Antle knew that business agents used the payroll deduction system to make campaign contributions.[6]

---

1. The petitioner asserts that the bookkeeper was reimbursed at the rate of $15 per month for the twenty months the payroll deduction program was in place, whereas the booker states in her declaration that she was reimbursed at one hundred and ten percent of her hourly rate of pay. However, these disputed facts are immaterial to the motions before the court.

2. Declaration of Michael Johnston, Exhibit D.

3. Declaration of Michael Johnston, Exhibit E.

4. Plaintiff's Memorandum of Points And Authorities In Support Of Plaintiff's Motion For Summary Judgment, p. 13.

5. Declaration of Gloria Tapia, ¶ 11; Declaration of Salvador Carillo, ¶ 3.

6. Declarations of Juan Villareal, Felix Herrera, and Alfredo Rivera, attached as Exhibits A, B, and C, respectively, to the Declaration of Salvador Carillo.

On June 9, 1995, the Secretary of Labor initiated the present suit against the Union to set aside the 1994 election based solely upon the payroll deduction system.

### III. LEGAL STANDARD

Rule 56, Fed.R.Civ.P., provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, the parties agree that the material facts relating to whether Ms. Garnica failed to exhaust her internal Union remedies, and whether the Union's payroll deduction system violated section 401(g) are undisputed. Thus, the cross-motions for summary judgment present purely questions of law that may properly be adjudicated by the court. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); Smith v. Califano, 597 F.2d 152 (9th Cir.1979), cert. denied 444 U.S. 980, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979).[7]

### IV. DISCUSSION

■ Title IV, section 402(b) of the LMRDA authorizes the Secretary of Labor, upon complaint by a union member who has exhausted his internal union remedies, to file suit when an investigation of the complaint gives the Secretary probable cause to believe that the union election was not conducted in compliance with the standards prescribed in section 401 of the Act. 29 U.S.C. § 482(b); see also Wirtz v. Local 153, Glass Bottle Blowers Association, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). "If the court finds that a violation of section 401 occurred which 'may have affected the outcome of an election,' it 'shall declare the election, if any, to be void and direct the conduct of a new election under the supervision of the Secretary.'" Local 153 at 464,[8] 88 S.Ct. at 644.

---

7. The Ninth Circuit has held that failure to exhaust internal union remedies is a matter of abatement that must be raised in a motion to dismiss, or be treated as such if it is raised in a motion for summary judgment. See Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179, 1180 (9th Cir.1988), citing Ritza v. International Longshoremen's and Warehousemen's Union, 837 F.2d 365, 368–369 (9th Cir.1988). However, the parties agree that their motions present purely a question of law, and therefore, the court's analysis is the same regardless of which procedure is followed.

8. LMRDA section 402 provides:
   (a) A member of a labor organization—
   (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
   (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,
   may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as constitution and bylaws may provide.
   (b) The Secretary shall investigate such complaint and, if he finds probable cause to believe

that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe.

\* \* \* \* \* \*

(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

\* \* \* \* \* \*

(2) that the violation of section 481 of this title may have affected the outcome of an election,
the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization.

\* \* \* \* \* \*

(d) An order directing an election, dismissing a complaint, or designating elected officers of a labor organization shall be appealable in the same manner as a final judgment in a civil action, but an order directing an election shall not be stayed pending appeal.
29 U.S.C. § 482.

"Title IV's special function in furthering the overall goals of the LMRDA is to insure 'free and democratic' elections." *Local 153*, 389 U.S. at 470, 88 S.Ct. at 648. Among the abuses the Legislators sought to remedy was the "incumbents' use of their inherent advantage over potential rank and file challengers [to] establish[ ] and perpetuate[ ] dynastic control of some unions." *Id.* at 474, 88 S.Ct. at 650; *see also International Organization of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 476, 111 S.Ct. 880, 887, 112 L.Ed.2d 991 (1991). In this case, the Secretary alleges that the 1994 Union election did not comply with the standards prescribed in section 401(g) because the Union utilized a payroll deduction system for campaign contributions that purportedly favored the incumbent candidates. Section 401(g) provides:

No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election subject to the provisions of this subchapter. Such monies of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

29 U.S.C. § 481(g).

## A. Exhaustion of Remedies

■ The Union initially contends that the Secretary is precluded from challenging the payroll deduction system because it is undisputed that Ms. Garnica failed to exhaust her internal union remedies specifically as to this claim. Whether the Secretary's complaint may exceed the scope of the union member's protest was addressed by the Supreme Court in *Wirtz v. Local Union No. 125, Laborers' International Union of North America, AFL–CIO*, 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968). In that case, the Secretary filed a complaint challenging the validity of a general election of union officers as well as a runoff election necessitated by a tie vote for one office in the general election, even though a union member had only protested the runoff election. The Supreme Court held that the Secretary was entitled to challenge both elections because the union had "fair notice" from the violation charged by the union member that the same unlawful conduct probably occurred at the earlier election as well. *Laborers' International* at 481, 88 S.Ct. at 641. The Court stated:

We reject the narrow construction adopted by the District Court and supported by respondent limiting the Secretary's complaint solely to the allegations made in the union member's initial complaint. Such a severe restriction upon the Secretary's power should not be read into the statute without a clear indication of congressional intent to that effect. Neither the language of the statute nor its legislative history provides such an indication; indeed, the indications are quite clearly to the contrary.

*Id.* at 482, 88 S.Ct. at 642. Further, the Court stated:

... Congress, having given the Secretary a broad investigative power, cannot have intended that his right to relief be defined by a complaining member's ignorance of the law or of the facts or by the artlessness of the member's protest.

*Id.* at 485, 88 S.Ct. at 643. In addressing the union's argument that the spirit and the letter of the exhaustion requirement compelled a contrary result, the Court stated:

It is true that the exhaustion requirement was regarded by Congress as critical to the statute's objective of fostering union self-government. By channeling members through the internal appellate processes, Congress hoped to accustom members to utilizing the remedies made available within their own organization; at the same time, however, unions were expected to provide responsible and responsive procedures for investigating and redressing members' election grievances. These intertwined objectives are not disserved but furthered by permitting the Secretary to include in his complaint at least any § 401 violation *he has discovered which the union had a fair opportunity to consider and redress in connection with a member's initial complaint.*

*Id.* at 484, 88 S.Ct. at 643 (emphasis added). Thus, the underlying principle of the Court's

holding was that Local 125 had been given a fair opportunity to consider and resolve the alleged violations in connection with the union member's protest. *Id.* at 481, 484, 485, 88 S.Ct. at 641, 642–43. Significantly, the *Laborers' International* Court declined to consider whether the result would have been the same if the Local 125 had *not* been given a fair opportunity to consider and resolve the alleged violations prior to the Secretary's involvement:

> On the facts of this case we think the Secretary is entitled to maintain his action challenging the June 8 general election because respondent union had fair notice from the violation charged by Dial in his protest of the runoff election that the same unlawful conduct probably occurred at the earlier election as well. [fn] We therefore need not consider and intimate no view on the merits of the Secretary's argument that a member's protest triggers a § 402 enforcement action in which the Secretary would be permitted to file suit challenging any violation of § 401 discovered in his investigation of the member's complaint.

*Id.* at 482, 88 S.Ct. at 641.

In the present case, it is undisputed that Ms. Garnica did not protest the payroll deduction system. Moreover, it is undisputed that nothing in Ms. Garnica's internal union protests gave the Union "fair notice" to consider and redress the alleged violation prior to the Secretary's involvement. As noted in the Secretary's Memorandum, Ms. Garnica's "protest included allegations regarding section 401(g) that were specific as to the use of union membership lists and campaigning by Business Agents on union time."[9] Therefore, *Laborers' International, supra,* is distinguishable from the present case.

Moreover, in *Hodgson v. Local 6799, United Steelworkers of America, AFL–CIO,* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510

(1971), decided three years after *Laborers' International,* the Supreme Court clearly imposed limits on the Secretary's authority to litigate violations uncovered during the investigation that were not specified in the union member's protest. In *Local 6799,* an unsuccessful candidate for a union office filed a protest complaining of several violations including the use of union facilities to aid incumbents. After failing to obtain relief through the internal union procedures, he filed a complaint with the Secretary that repeated the allegations in his earlier protest. The Secretary investigated the complaint, and filed suit alleging the improper use of the union facilities and a new objection concerning a meeting-attendance requirement imposed as a condition of candidacy.

The trial court held that section 401(g) had been violated by the use of the union facilities for the benefit of the incumbent president's campaign, but held that the meeting-attendance requirement was reasonable. The Ninth Circuit affirmed without reaching the question whether the meeting-attendance requirement was reasonable. Instead, the court held that the union member's failure to challenge the meeting-attendance requirement during his pursuit of internal union remedies precluded the Secretary from later raising the issue. The court reasoned that because the Act requires exhaustion of internal union remedies before complaining to the Secretary, Congress intended to empower the Secretary to assert only "those violations that are fairly apparent from a member's protest to the union...."[10]

The Supreme Court also affirmed. Recognizing that the statutory language of section 402(b) was too ambiguous[11] to "bear the weight of the Secretary's expansive view of his authority," the Court next examined the legislative history and statutory policies behind section 402 and the rest of the Act.

---

9. Plaintiff's Memorandum of Points And Authorities In Support Of Plaintiff's Motion For Summary Judgment, p. 13.

10. *Shultz v. Local Union 6799, United Steelworkers of America, AFL–CIO,* 426 F.2d 969 (9th Cir. 1970), *aff'd Hodgson v. Local Union 6799, United Steelworkers of America, AFL–CIO,* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971).

11. The Court suggested that the authority vested in the Secretary pursuant to section 402(b) to file a complaint for "a violation" might mean "any violation whatever revealed by the investigation," or alternatively "any of the violations raised by the union member during his internal union election protest." *Id.* at 338, 91 S.Ct. at 1845.

*Local 6799,* 403 U.S. at 336–338, 91 S.Ct. at 1845. The Court determined that the requirement of section 402(a) that a union member first seek redress of alleged election violations within the union before enlisting the aid of the Secretary was designed by its drafters to harmonize the need to eliminate election abuses with a desire to avoid unnecessary governmental intervention. *Id.* at 339, 91 S.Ct. at 1845–46. The Secretary argued that these congressional concerns were in fact served in that case because the election in question was actually protested by a union member within the union and because the union was later given a chance to remedy specific violations before being taken to court by the Secretary. *Id.* at 339, 91 S.Ct. at 1845–46. The Court disagreed:

> ... the Secretary urges that § 402(b) empowers him to act so long as a union member objects in any way to an election and so long as the union is given the opportunity to remedy voluntarily any violations that the secretary determines may have affected the outcome of that election, regardless of whether the member objected to the violations during his protest to the union.
>
> However, under petitioner's limited view of the congressional objectives, the exhaustion requirement of § 402(a) is left with virtually no purpose or part to play in the statutory scheme. "Exhaustion" would be accomplished given any sort of protest within the union, no matter how remote the complaint made there from the alleged violation later litigated. The obvious purpose of an exhaustion requirement is not met when the union, during "exhaustion," is given no notice of the defects to be cured. Indeed the primary objective of the exhaustion requirement is to preserve the vitality of internal union mechanisms for resolving election disputes—mechanisms to decide complaints brought by members of the union themselves. To accept petitioner's contention that a union member, who is aware of the facts underlying an alleged violation, need not first protest his violation to his union before

complaining to the Secretary would be needlessly to weaken union self-government. Plainly petitioner's approach slights the interest in protecting union self-regulation and is out of harmony with the congressional purpose reflected in § 402(a).

*Id.* at 339–340, 91 S.Ct. at 1846. Nevertheless, the Court recognized that the exhaustion requirement should not be applied so stringently as to bar claims simply because union members may use broad or imprecise language in framing their protests and may lack the necessary information to be aware of the existence or scope of many election violations. *Id.* The Court emphasized that union democracy "is far too important to permit these deficiencies to foreclose relief from election violations ..." *Id.* However, the Court concluded that "when a union member is aware of the facts supporting the alleged election violation, the member must, in some discernible fashion, indicate to this union his dissatisfaction with those facts if he is to meet the exhaustion requirement." *Id.* at 341, 91 S.Ct. at 1846.

Seizing upon the Court's concluding remarks, the Secretary contends that *Local 6799, supra,* is distinguishable from the present case because the protesting union member here, Ms. Garnica, was unaware of the facts supporting the alleged election violation. Ms. Garnica states in her declaration that prior to the Secretary of Labor's investigation, she did not know how the incumbents raised their campaign funds, and that she did not know about the Union's payroll deduction system.[12] Although Ms. Garnica acknowledges attending some of the general membership meetings, she does not recall reading the minutes of the August 12, 1992 Executive Board meeting regarding the payroll deduction system.[13] In light of the particular facts in this case, the Secretary argues the exhaustion requirement should be excused.

The Supreme Court's holdings in *Laborers' International, supra,* and *Local 6799, supra,* do not necessarily foreclose the Secretary's argument. Indeed, at least two district courts have accepted the argument that

---

**12.** Decl. of Guillermina Garnica, ¶ 9, 10.

**13.** *Id.,* ¶ 14.

the exhaustion requirement may be excused when the protesting union member does not know *and* could not have known of the facts constituting the alleged violation. *Donovan v. Blasters, Drillrunners & Miners Union, Local 29*, 521 F.Supp. 595, 597 (S.D.N.Y. 1981); *Donovan v. Local 738, United Automobile, Aerospace And Agricultural Implement Workers of America*, 575 F.Supp. 52, 54–55 (D.Md.1983). However, these cases are distinguishable from the present case because they involved improper contributions by unknown employers, and therefore it was highly unlikely that the complainant would discover the alleged violations. In *Local 29*, two unsuccessful candidates for office filed a protest alleging numerous violations, all of which the Secretary determined were not actionable. However, the Secretary discovered in his investigation that one of the incumbent party candidates used an employer's photocopier to reproduce campaign material, in violation of section 401(g). Accordingly, the Secretary brought an action to have the union's election declared null and void. The court excused the exhaustion requirement, reasoning that the complainants "did not know and could not have known of this violation." *Local 29*, 521 F.Supp. at 597. In *Local 738*, the Secretary discovered during his investigation that the newly elected vice president had typed a letter of endorsement on his employer's typewriter, and made several hundred copies of the letter on the employer's machine. *Local 738*, 575 F.Supp. at 55. The defendant argued that the exhaustion requirement had not been satisfied, and therefore, the court lacked jurisdiction. The court rejected defendant's argument, holding that the complainant was excused from exhausting his internal union remedies because he "did not know and could not have known of the violation." *Id.*

Unlike the complainants in *Local 29* and *Local 738*, Ms. Garnica had numerous avenues through which to discover the alleged violation. There were no unknown third party employers involved in the payroll deduc-tion system. Instead, the system was passed at an Executive Board meeting in August, 1992. The minutes were read and approved at a subsequent general membership meeting that was open to all Union members.[14] Even if Ms. Garnica did not attend the general membership meeting, she could have discovered the payroll system by reviewing the minutes of the Executive Board meeting that were available at the Union office in Salinas. Indeed, Ms. Garnica, who worked in Salinas, had visited the Union office at least twice between 1992 and 1994 to review other Executive Board minutes.[15] Ms. Garnica also could have discovered the alleged violation through her business agent, Gloria Tapia, who had made regular contributions to the 1994 incumbent slate through the payroll deduction system. They were friends, and regularly discussed union activities, including the 1994 election campaign.[16] The payroll deduction system was also known to other rank and file members employed at the Bud Antle company with Ms. Garnica.[17] Under these circumstances, Ms. Garnica's failure to exhaust her internal union remedies as to the use of the Union payroll deduction system for campaign contributions cannot be excused.

Moreover, it is questionable whether the holdings of *Local 29* and *Local 738* are supported by either the language or the underlying policies of the statute. In *Brock v. Intern. Union of Operating Engineers, Local Union No. 369*, 790 F.2d 508, 514 (6th Cir. 1986), the court astutely observed:

> The statutory scheme makes no provision for exceptions to the exhaustion requirement of section 482(a), nor does the legislative history of the LMRDA give any indication that Congress intended that the exhaustion requirement be excused for violations of which union members were unaware. Indeed, the legislative history of the Act quite clearly expresses a congressional intent to minimize government intervention into union affairs in order to en-

---

**14.** Declaration of Michael Johnston, ¶¶ 10–12.

**15.** Declaration of Michael Johnston, ¶ 13.

**16.** Declaration of Gloria Tapia, ¶¶ 5, 8.

**17.** Declarations of Juan Villareal, Felix Herrera, and Alfredo Rivera, attached as Exhibits A, B, and C, respectively, to the Declaration of Salvador Carillo.

courage union self-government. [fn] The Supreme Court also has noted that this policy objective is consistent with, and promoted by, an exhaustion requirement that permits "the unions themselves [to] remedy as many election violations as possible without the Government's ever becoming involved." *Local Union 6799*, 403 U.S. at 339, 91 S.Ct. at 1845. *See also* S.Rep. No. 187, 86th Cong., 1st Sess. 21, *reprinted in* 1959 U.S.Code Cong. & Ad.News 2318, 2337. Furthermore, the cases interpreting the exhaustion requirement flexibly, so as not to preclude complaints the union reasonably should have been able to discern from the complaining member's protest, do not stand for the proposition that the requirement may be completely excused. To accept the contention that the Secretary may litigate violations of which no union member complained simply because the complaining member was unaware of them would almost certainly undermine both the policies and the limits on the Secretary's power that are implicit in the statutory scheme.

*Brock v. Intern. Union of Operating Engineers*, 790 F.2d 508, 514 (6th Cir.1986); *accord Shultz v. Local Union 6799*, 426 F.2d 969, 971–972 (9th Cir.1970), *aff'd Hodgson v. Local Union 6799, United Steelworkers of America, AFL–CIO*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971).[18]

## V. CONCLUSION

For the reasons set forth above, the Secretary of Labor's complaint is hereby DISMISSED with prejudice.[19]

IT IS SO ORDERED.

---

**18.** Because the Secretary is barred from litigating the claim, the court need not address whether the Union's employee payroll deduction system violated section 401(g).

**19.** Although the parties' have moved for summary judgment, the appropriate disposition is dismissal. *See* cases cited *supra* note 7.